## Commonwealth vs. Roy W. Hoyt, Sr.

Berkshire. October 6, 2011. - December 15, 2011.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Admissions and confessions, Assistance of counsel, Waiver, Voluntariness of statement. *Constitutional Law,* Admissions and confessions, Assistance of counsel, Waiver of constitutional rights, Voluntariness of statement. *Evidence,* Admissions and confessions, Voluntariness of statement, First complaint. *Waiver.*

Discussion of the standard of review used when reviewing a lower court finding based on documentary evidence available to this court. [148-149]

A criminal defendant's statement ("I'd like an attorney present") in response to an officer's question ("Do you wish to speak to us now?") unambiguously reflected his desire to have counsel present during questioning, and his subsequent observation that he could not afford counsel did not render his request for counsel equivocal [149-151]; further, regardless of the clarity of the defendant's invocation of his right to counsel, the Commonwealth failed to satisfy its burden of establishing beyond a reasonable doubt that the defendant's subsequent statements constituted a knowing, voluntary, and intelligent waiver of his right to counsel, given that the defendant's statements demonstrated his clear ignorance of that right [151-154]; therefore, where the erroneous admission at trial of inculpatory statements made by the defendant in response to further questioning initiated by officers after his invocation of the right to counsel was not harmless beyond a reasonable doubt, a new trial was required [154-156].

Discussion of issues likely to arise, at the retrial of indictments charging rape and indecent assault and battery, concerning the admission in evidence of multiple first complaint testimony. [156-158]

Indictments found and returned in the Superior Court Department on June 14, 2007.

A pretrial motion to suppress evidence was heard by *Daniel A. Ford,* J., and the cases were tried before *John A. Agostini,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Richard L. Goldman* for the defendant.

*Karen L. Carlo,* Assistant District Attorney, for the Commonwealth.

LENK, J. The defendant appeals from his convictions of two counts of rape of a child under sixteen years of age, G. L. c. 265, § 23, and two counts of indecent assault and battery on a person who has attained the age of fourteen years, G. L. c. 265, § 13H. The defendant contends, among other claims, that certain statements admitted against him at trial were obtained in violation of his right to counsel under the Fifth Amendment to the United States Constitution, as interpreted by *Miranda* v. *Arizona*, 384 U.S. 436 (1966) (*Miranda*). During custodial interrogation, after being given Miranda warnings, the defendant told police, "I'd like an attorney present. I mean but I can't afford one. So I guess I'll speak to you now. I don't have an attorney." Immediately thereafter, and without counsel present, the defendant had further discussion with the officers, signed a written waiver of Miranda rights, continued to be questioned, and made inculpatory statements that he was later unsuccessful in attempting to suppress.

We granted the defendant's application for direct appellate review to consider whether, in making the above-quoted statement at the outset of questioning, the defendant invoked his Fifth Amendment right to counsel. We conclude that the defendant unambiguously invoked his right to counsel and that questioning should have ceased until counsel was made available. Therefore, the incriminating statements should not have been admitted at trial. In any event, the defendant is entitled to relief because the Commonwealth did not satisfy its heavy burden of establishing beyond a reasonable doubt that the defendant's subsequent waiver of that right was knowing, voluntary, and intelligent. See *Commonwealth* v. *Day*, 387 Mass. 915, 920-921 (1983). Because we cannot conclude that the erroneous admission of the defendant's statements was harmless beyond a reasonable doubt, a new trial is required.

*Background.* We summarize the procedural backdrop as well as relevant facts as the jury could have found them, reserving certain details for later discussion.

The complainant was born on September 20, 1990. After the death of his father in October, 2003, the complainant began attending Native American gatherings with his mother, who had been involved previously in the local Native American community. The complainant and his mother met the defendant at one such

gathering in the spring of 2004. The complainant purchased a rabbit from the defendant and subsequently began visiting the defendant's house to help take care of the defendant's many animals. Although at first his mother went to the defendant's house with him, the complainant was eventually allowed to visit the defendant by himself.

The complainant testified to a pattern of sexual conduct between himself and the defendant that began at this time. Specifically, he testified to incidents in which the defendant and the complainant would engage in sexualized touching. By November of 2005, the conduct escalated when the complainant and the defendant began to engage in oral sex. The defendant provided the complainant with alcohol and marijuana when they had sex. The complainant testified further that at all times during this relationship he did not want to engage in any sexual acts with the defendant, but that he acquiesced out of fear for his mother's safety, even though the defendant had never threatened either the complainant or his family.

In the spring of 2007, the complainant spoke to someone for the first time about the nature of his encounters with the defendant, confiding in a Native American elder who had been teaching him about that culture. Soon thereafter, the complainant told his mother about his encounters with the defendant. To help in proving that the defendant had engaged in these acts, the complainant and his mother decided to make an audio recording of a conversation between the complainant and the defendant discussing the sexual conduct. After making this recording, the complainant's mother filed a complaint with the Pittsfield police department; the complaint was investigated by Detective Dale Eason. After further investigation — including listening to the audio recording and speaking with the complainant, his mother, and the elder — Eason arrested the defendant.

Eason and Pittsfield police Sergeant Marc Strout questioned the defendant at the police station after his arrest. Eason started the interrogation by reviewing the Miranda waiver form with the defendant.[1] Although the defendant did not have his reading glasses, he gave his signed permission for the interrogation to

---

[1] The form includes, at the top, a space for the defendant to consent to the recording of the interrogation. The form goes on to list each of the rights

be videorecorded.[2] After Eason read the defendant the Miranda warnings,[3] the following exchange took place:

> EASON: "This right here states that you understood everything I just read to you. Having these rights in mind, do you wish to speak to us now?"
>
> DEFENDANT: "I'd like an attorney present. I mean but I can't afford one. So I guess I'll just speak to you now. I don't have an attorney."
>
> EASON: "Okay. If you want to speak to us later, that's fine as well. I mean but we're not, you know, we don't get you an attorney, we can let you use a phone book and stuff like that, but it's up to you."
>
> DEFENDANT: "I'll just talk to you now."
>
> EASON: "Okay."
>
> STROUT: "Roy, I just want to make it clear. You want to talk to us now, and you don't want an attorney?"
>
> DEFENDANT: "Uh, I'd have to wait here until an attorney came right?"
>
> STROUT: "You can . . . we can let you use the phone and the phone book to call an attorney. I can't tell you if they're gonna come here, I don't know what they would do."
>
> DEFENDANT: "I'll just talk to you without an attorney."

described in a proper Miranda warning, and provides space for the defendant to indicate that he agrees (or disagrees) that he has understood the rights and that he wishes to speak with the officers.

[2] We have reviewed the video recording forming the basis of this appeal.

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 479 (1966) (*Miranda*), guarantees a criminal suspect subject to custodial interrogation the right to "be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

Thereafter, the defendant signed the form, waiving his rights under *Miranda*, and made inculpatory statements.

On June 14, 2007, the defendant was indicted for rape of a child by force, G. L. c. 265, § 22A; assault with intent to commit rape and rape, G. L. c. 265, § 22 (*b*); indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B; and indecent assault and battery on a person who has attained the age of fourteen, G. L. c. 265, § 13H.

The defendant filed a pretrial motion to suppress incriminating statements made during the police interrogation.[4] After an evidentiary hearing, a Superior Court judge denied the motion. Having viewed the video recording of the interrogation, the judge concluded that suppression was not required because there had been no "unequivocal invocation" of the right to counsel.[5]

After a four-day trial before a different Superior Court judge, during which the entire interrogation video recording was admitted in evidence and played for the jury,[6] the defendant was found guilty of two counts of rape of a child and two counts of indecent assault and battery.[7]

---

[4]The defendant moved also to suppress the audio recording of the telephone conversation between himself and the complainant. The same motion judge denied the motion, and the defendant does not press the issue on appeal.

[5]In reaching his decision, the motion judge did not discuss the validity of the defendant's waiver, an issue that had been raised by the defendant, albeit somewhat obliquely. On appeal, the Commonwealth does not suggest that the waiver issue was not properly raised below, and its brief treats the issue as having been preserved for review. We treat the question of the validity of the defendant's waiver as preserved. See *Commonwealth* v. *Perez*, 411 Mass. 249, 256 n.5 (1991). That the motion judge did not make findings of fact with respect to the defendant's waiver "is not fatal, for his conclusion is reviewable as a matter of law," *Commonwealth* v. *Parham*, 390 Mass. 833, 837 (1984), since the decision not to suppress the defendant's statements renders the judge's conclusion as to the validity of the waiver "clearly evident from the record." *Commonwealth* v. *Brady*, 380 Mass. 44, 52 (1980), quoting *Jackson* v. *Denno*, 378 U.S. 368, 378-379 (1964).

[6]The jury were twice given a "humane practice" instruction, in which the judge instructed that they could not consider the defendant's statements unless they concluded, beyond a reasonable doubt, that the statements were made "voluntarily, freely, and rationally" after the defendant "received, understood, and waived his Miranda rights."

[7]Prior to submission of the case to the jury, the judge reduced the four forcible rape counts to three charges of rape of a child and entered required findings of not guilty on the four original indictments charging rape. The defendant

On appeal, the defendant claims error in three respects. First, he contends that the judge erred in allowing the admission of his incriminating statements obtained in violation of *Miranda*, arguing both that he invoked his right to counsel at the start of the interrogation and that his waiver was invalid. Second, the defendant argues that the judge erred in admitting in evidence testimony as to multiple first complaints, thereby giving rise to a substantial risk of a miscarriage of justice. Finally, the defendant argues that he was deprived of his right to the effective assistance of counsel.

*Discussion.* a. *Motion to suppress incriminating statements in violation of* Miranda. i. *Standard of review.* In reviewing a ruling on a motion to suppress, "[w]e accept the judge's subsidiary findings absent clear error but conduct an independent review of his ultimate findings and conclusions of law." *Commonwealth* v. *Bostock*, 450 Mass. 616, 619 (2008), quoting *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Bostock*, *supra* at 619, quoting *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996). Deference as to a motion judge's factual findings is generally appropriate because "[t]he judge determines the weight and credibility of the testimony" taken at the evidentiary hearing on the motion to suppress. *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004).

Here, however, the motion judge heard no such testimony. At the evidentiary hearing, he considered only documentary evidence: the Miranda waiver form, the interrogation video recording, and the transcript of the interrogation. We have all of these materials before us. We are thus "in the same position as the motion judge in viewing the videotape" as well as the other evidence submitted to him. *Commonwealth* v. *Prater*, 420 Mass. 569, 578 n.7 (1995). In such cases, "[w]e have consistently held that lower court findings based on documentary evidence available to an appellate court are not entitled to deference." *Commonwealth* v. *Novo*, 442 Mass. 262, 266 (2004). "[W]e

---

was acquitted on one charge of rape of a child under sixteen and two charges of indecent assault and battery on a child under the age of fourteen.

will 'take an independent view' of recorded confessions and make judgments with respect to their contents without deference to the fact finder, who 'is in no better position to evaluate the[ir] content and significance.' " *Id.*, quoting *Commonwealth v. Bean*, 435 Mass. 708, 714 n.15 (2002).

ii. *Invocation of the Fifth Amendment right to counsel.* The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The United States Supreme Court recognized in *Miranda, supra*, that this protection against compelled self-incrimination must extend to police custodial interrogations because "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda, supra* at 467. In light of these pressures, in circumstances of custodial interrogation,[8] "[p]rior to any questioning, the [suspect] must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* at 444. "[A] warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time." *Id.* at 469. A defendant's statements may not be placed before a jury unless the Commonwealth proves beyond a reasonable doubt that, after having been advised of these rights, the defendant gave a knowing, voluntary, and intelligent waiver of them. *Commonwealth v. Day*, 387 Mass. 915, 920-921 (1983). If, on the other hand, the defendant invokes his right to counsel, all interrogation must cease until counsel is made available, unless the defendant himself reinitiates further communication with the police. See *Edwards v. Arizona*, 451 U.S. 477, 484-485 (1981).

In deciding whether a defendant has invoked the Fifth Amendment right to counsel, the United States Supreme Court has

---

[8]Here, there is no dispute that the defendant was subject to custodial interrogation, as contemplated in *Miranda*, at the time he made incriminating statements, because he was subject to "questioning initiated by law enforcement officers after [being] taken into custody." *Miranda, supra* at 444.

stated that "after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis* v. *United States*, 512 U.S. 452, 461 (1994) (*Davis*). This post-waiver test requires that the invocation be a sufficiently clear statement such "that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459. The United States Supreme Court has recently imported the *Davis* rule requiring heightened clarity into the context of a prewaiver invocation of the right to remain silent, see *Berghuis* v. *Thompkins*, 130 S. Ct. 2250, 2260 (2010), and the Commonwealth contends that the test in *Davis* now extends to prewaiver invocations of the right to counsel.[9] The defendant maintains that even if this is the case, he unambiguously invoked his right to counsel such that a reasonable police officer would understand the statement to be a request for an attorney.[10]

We disagree with the motion judge's conclusion that the defendant's statement was ambiguous. In these circumstances, the statement, "I'd like an attorney present," in response to the question, "Do you wish to speak to us now?" was an unambiguous invocation of the defendant's right to counsel. We have reached the same conclusion with respect to statements displaying with even less clarity a defendant's desire for counsel. See, e.g., *Commonwealth* v. *Contos*, 435 Mass. 19, 29-30 (2001) ("I think I'm going to get a lawyer" constituted unambiguous invocation of right to counsel). The defendant here was not

---

[9]Contrary to the Commonwealth's contention, the applicability of *Davis* v. *United States*, 512 U.S. 452, 461 (1994) (*Davis*), to prewaiver invocations of the right to counsel under art. 12 of the Massachusetts Declaration of Rights was not settled in *Commonwealth* v. *Peixoto*, 430 Mass. 654 (2000). That case involved a situation in which the defendant was not under arrest and not subject to custodial interrogation. See *id.* at 656 n.1. Further, in the *Peixoto* decision, we did not cite *Davis*, and therefore could not have intended to extend it as a matter of State law.

[10]The defendant contends also that, even if the *Davis* rule applies in the prewaiver context with respect to the right to counsel under the Fifth Amendment to the United States Constitution, art. 12 requires a more protective rule. Given our decision, we reach neither the question whether the *Davis* rule has been extended to prewaiver invocations of the right to counsel under the Fifth Amendment, nor whether art. 12 would require that we decline to apply the *Davis* heightened clarity rule if extended to such prewaiver invocations.

"musing about the possibility of stopping the questioning until he has spoken with an attorney." *Commonwealth* v. *Morganti,* 455 Mass. 388, 397-398 (2009) (*Morganti*), and cases cited (statement "I *might* need a lawyer and want to talk with him before talking to you" did not unambiguously invoke right to counsel [emphasis added]). Unlike in *Morganti,* where the defendant's isolated statement occurred in the middle of interrogation, the defendant here stated explicitly, before questioning was under way, and in response to a direct question concerning his desire to invoke his right to counsel, that he wanted an attorney present.

Furthermore, the defendant's statement was not merely an "acknowledgment of the serious nature of the charges facing him," *Commonwealth* v. *Pennellatore,* 392 Mass. 382, 387 (1984), since the defendant actually said that he would like an attorney present for questioning rather than simply stating that he would need an attorney at some point in the future. Contrast *id.* (defendant's statement, "I guess I'll have to have a lawyer for this," was, viewed in context, recognition of seriousness of charges rather than affirmative request for attorney). The defendant's statement here unambiguously reflected a desire to have counsel present during questioning. His difficulty was that he could not afford an attorney. Where a suspect invokes his right to counsel but notes that he cannot afford counsel, the latter observation does not render the request for counsel equivocal. Because *Miranda* requires that a suspect who cannot afford an attorney will have one provided for him, indigence cannot be a ground on which to find equivocation.

When a defendant invokes his right to counsel, all subsequent statements are inadmissible unless counsel is provided or the Commonwealth can prove beyond a reasonable doubt that the defendant "initiate[d] further communication, exchanges, or conversations with the police," *Edwards* v. *Arizona, supra* at 485, and thereby waived his right to counsel. *Commonwealth* v. *Rankins,* 429 Mass. 470, 473 (1999). Here, because the officers initiated further questioning of the defendant after his unambiguous invocation of the right to counsel, the defendant's subsequent statements must be suppressed.

iii. *Waiver of right to counsel under State law.* The Com-

monwealth contends, however, that, when read in its entirety, the defendant's initial invocation of his right to counsel ("I'd like an attorney present") was rendered ambiguous by what he said immediately thereafter ("I mean but I can't afford one. So I guess I'll just speak to you now. I don't have an attorney"). In so arguing, the Commonwealth ignores the long-standing principle that "postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Smith* v. *Illinois*, 469 U.S. 91, 100 (1984). However, even if we agreed with the Commonwealth's contention, assumed that the *Davis* heightened clarity requirement was applicable to prewaiver invocations of the right to counsel, and determined that the invocation did not satisfy the *Davis* rule, the defendant's inculpatory statements would nevertheless require suppression. Because these subsequent statements demonstrated the defendant's clear ignorance of his right to appointed counsel, the Commonwealth cannot meet its burden of establishing a knowing, voluntary, and intelligent waiver of that right beyond a reasonable doubt. The invalidity of the defendant's waiver requires that, regardless of the clarity of his invocation of the right to counsel, his inculpatory statements must be suppressed.

The rule in *Miranda* — establishing a presumption of coercion in the absence of the required warnings — "protects both Fifth Amendment rights and rights guaranteed under art. 12 [of the Massachusetts Declaration of Rights]."[11] *Commonwealth* v. *Martin*, 444 Mass. 213, 218 (2005). For any statement made during custodial interrogation to be admissible against the defendant at trial, both the Federal and State constitutions require that the prosecution prove that the defendant waived these rights before making the statement. See *Commonwealth* v. *Edwards*, 420 Mass. 666, 669-670 (1995), citing *Miranda, supra*. It is a particularly heavy burden that the Commonwealth bears in proving such waiver, *Commonwealth* v. *Dustin*, 373 Mass. 612, 614 (1977), quoting *Miranda, supra* at 475, because in Massachusetts proof of a valid waiver must be shown beyond a reasonable doubt. *Commonwealth* v. *Day*, 387 Mass. 915, 920-921 (1983). Contrast *Colorado* v. *Connelly*, 479 U.S. 157, 168

---

[11] Article 12 provides, in relevant part: "No subject shall . . . be compelled to accuse, or furnish evidence against himself . . . ."

(1986), and cases cited (requiring, as matter of Federal law, proof of waiver only by "preponderance of the evidence"). Indeed, we " 'indulge every reasonable presumption against waiver of fundamental constitutional rights' . . . including the right against self-incrimination." *Commonwealth* v. *Simon*, 456 Mass. 280, 305-306 (2010) (Botsford, J., dissenting), quoting *Commonwealth* v. *White*, 374 Mass. 132, 137 (1977), aff'd (by an equally divided Court), 439 U.S. 280 (1978).

As stated, "[t]o be valid the waiver must be made voluntarily, knowingly, and intelligently." *Commonwealth* v. *Edwards, supra* at 670. "The question is not one of form, but rather whether the defendant *in fact* knowingly and voluntarily waived the rights delineated in the *Miranda* case" (emphasis supplied). *North Carolina* v. *Butler*, 441 U.S. 369, 373 (1979). "A confession can be voluntary in the legal sense only if the suspect actually understands the import of each Miranda warning," *Commonwealth* v. *Garcia*, 379 Mass. 422, 429 (1980), and is not "threatened, tricked, or cajoled into a waiver." *Miranda, supra* at 476. In deciding whether a defendant's waiver of the rights described in the Miranda warning is valid, "a court must examine the totality of the circumstances, including the characteristics of the accused and the details of the interrogation." *Commonwealth* v. *Silva*, 388 Mass. 495, 501 (1983).

Where, as here, the defendant manifestly did not understand the meaning of one or more of the rights described in the Miranda warnings, the Commonwealth cannot meet its burden of proving a valid waiver beyond a reasonable doubt. *Miranda* requires a warning that a suspect not only has a right to consult with an attorney, but also that "if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda, supra* at 479. "Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that [a suspect] can consult with a lawyer if he has one or has the funds to obtain one." *Id.* at 473. Although he received the full Miranda warnings, the defendant was under just such a misapprehension. In his statements to the police after the Miranda warnings were read, the defendant not only demonstrated a desire to invoke his right to appointed counsel, but also showed a clear ignorance of the meaning of

that right. Any arguable ambiguity in the defendant's invocation was a product of this fundamental misunderstanding of his right to appointed counsel. Because a knowing waiver requires that a "defendant must understand 'the [Miranda] warnings themselves,' " *Commonwealth* v. *Hilton*, 443 Mass. 597, 606 (2005), quoting *Commonwealth* v. *Raymond*, 424 Mass. 382, 393 (1997), the defendant's misunderstanding of his right to appointed counsel means that his statements must be suppressed.

This misunderstanding was exacerbated by what might have been an effort on the part of the police to clarify the defendant's statements. By twice offering the defendant a telephone book so that he could call an attorney, and telling the defendant that "we don't get you an attorney," and "I can't tell you if they're gonna come here, I don't know what they would do," however, Strout and Eason were not in fact clarifying matters. Their efforts only made the situation worse by effectively emphasizing the option the defendant could not pursue (a private attorney) while obscuring the option in which the defendant had expressed interest and to which he had a right (an appointed attorney). In any event, the officers did not correct the defendant's manifest misunderstanding of his right to appointed counsel, and as a result the Commonwealth cannot prove beyond a reasonable doubt that the defendant waived his Miranda rights knowingly, voluntarily, and intelligently. His inculpatory statements should thus not have been admitted at trial.

iv. *Whether the error was prejudicial.* Given this error, we must determine whether the admission of the defendant's statements requires a new trial. Although the defendant failed to renew his objection at trial after the motion judge denied his pretrial motion to suppress, "[t]he denial of a motion to suppress evidence on constitutional grounds . . . is reviewable without further objection at trial." *Commonwealth* v. *Whelton*, 428 Mass. 24, 25-26 (1998), and cases cited. The question thus becomes whether the admission of the defendant's statements was harmless beyond a reasonable doubt. See *Commonwealth* v. *Ghee*, 414 Mass. 313, 318-319 (1993). To answer that question, "we analyze the case to see whether the error might have had an effect on the jury or contributed to the verdicts, and whether the Commonwealth's evidence was ' "merely cumulative" of

evidence properly before the jury,' . . . or was overwhelming without the erroneously admitted evidence." *Commonwealth* v. *Dagraca*, 447 Mass. 546, 553 (2006), quoting *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 n.8 (1987).

The Commonwealth bears the burden of demonstrating that an error was harmless beyond a reasonable doubt. *Commonwealth* v. *Tyree*, 455 Mass. 676, 701 (2010). We consider a number of factors in deciding whether the Commonwealth has met its burden: "the importance of the evidence in the prosecution's case; the relationship between the evidence and the premise of the defense; who introduced the issue at trial; the frequency of the reference; whether the erroneously admitted evidence was merely cumulative of properly admitted evidence; the availability or effect of curative instructions; and the weight or quantum of evidence of guilt." *Commonwealth* v. *Dagraca, supra* at 553, citing *Commonwealth* v. *Vasquez*, 456 Mass. 350, 360 n.12 (2010). Although these factors guide our review, "there is no uniform standard for all cases; the results of our review are determined by the circumstances of each case." *Commonwealth* v. *Mahdi*, 388 Mass. 679, 697 (1983).

Here, the erroneous admission of the defendant's incriminating statements was not harmless. The defendant's theory of the case, at least once it was known that his inculpatory statements had not been suppressed, was that the consensual sexual contact occurred only after the complainant reached the age of fourteen, and consensual intercourse began only after the complainant reached age sixteen. Other than the complainant's testimony, the defendant's erroneously admitted statements were the only evidence of prior sexual contact or intercourse between the defendant and the complainant.

The recording of the interrogation was played for the jury during trial and was available to them during deliberations. During the interrogation, the defendant not only admitted to engaging in oral sex with the complainant on three occasions, but also changed his story throughout the interrogation, thereby "increas[ing] the likelihood that the jury would view the defendant as a liar, a man who would change his story in order to avoid responsibility for his crimes." *Commonwealth* v. *McNulty*, 458 Mass. 305, 322 (2010) (concluding that such evidence

was not harmless beyond reasonable doubt). Furthermore, the prosecutor referred to the defendant's statements repeatedly in both her opening statement and closing argument. See *Commonwealth* v. *Tyree, supra* at 703 (tainted evidence was not harmless beyond reasonable doubt because "repeated emphasis on the improperly admitted evidence in the prosecutor's closing argument . . . reflects the centrality of that evidence to the Commonwealth's case").

Because the unlawful evidence "contributed to or might have contributed to the verdicts," *Commonwealth* v. *Molina*, 439 Mass. 206, 212 (2003), quoting *Commonwealth* v. *Perrot*, 407 Mass. 539, 549 (1990), a new trial is mandated.

b. *First complaint evidence.* We address briefly the defendant's claim of first complaint error in the event that it arises on retrial.[12] See *Commonwealth* v. *King*, 445 Mass. 217, 243 (2005), cert. denied, 546 U.S. 1216 (2006) (*King*); *Commonwealth* v. *McGee*, 75 Mass. App. Ct. 499, 502 (2009).

The defendant contends that it was error to allow multiple first complaint testimony. The complainant, his mother, and Eason testified variously as to the complainant's disclosures to the elder and to his mother, and as to the investigative process itself, notwithstanding the undisputed fact that it was the elder to whom the complainant first complained. The elder did not testify. The defendant contends that only the complainant's disclosures to the elder were admissible as first complaint testimony and then only if the elder testified as a first complaint witness. The defendant asserts that the complainant's disclosure to his mother would be admissible as first complaint testimony only if the judge had designated her as a substitute first complaint witness. The defendant maintains also that, insofar as Eason's testimony as to statements by the complainant, his mother, and the elder, as well as about the investigative process itself, was admitted as first complaint, it was admitted in error.

The first complaint doctrine prohibits introduction of testimony from more than one witness concerning a victim's reports of a sexual assault, "limiting [such] testimony to that of . . . the first person told of the assault." *King, supra*. In limited cir-

---

[12]In light of our disposition, we need not address the defendant's claim concerning ineffective assistance of counsel, which is unlikely to arise on retrial.

cumstances, however, a judge may permit the testimony of a complaint witness other than the individual to whom the victim first disclosed the assault.[13] First complaint testimony is admissible only where "the fact of the assault or the issue of consent is contested." *Id.* at 247.

Under the first complaint doctrine, "[l]aw enforcement officials . . . may testify to the complaint only where they are in fact the first to have heard of the assault, and not where they have been told of the alleged crime after previous complaints or after an official report." *King, supra* at 243.[14] See *Commonwealth v. Monteiro*, 75 Mass. App. Ct. 489 (2009).

At any retrial, these considerations must be taken into account. If the elder testifies as the first complaint witness, no other witnesses should testify in that capacity. If the elder does not testify, the complainant may not testify to the fact of his first complaint to the elder or its details, unless the elder is "deceased or the judge determines that there is some other compelling reason for the witness's absence that is not the fault of the Commonwealth."[15] *King, supra* at 245 n.24. To the extent that the elder is determined by the judge to be "unavailable" or "incompetent [to testify]," *id.* at 243-244, the judge may permit substitute first complaint evidence by the complainant's mother. In such a circumstance, if the complainant's mother is substituted as the first complaint witness, the complainant would

---

[13]For example, "where the first person told of the alleged assault is unavailable, incompetent, or too young to testify meaningfully." *Commonwealth v. King*, 445 Mass. 217, 243-244 (2005), cert. denied, 546 U.S. 1216 (2006). Evidence of later complaints may be admissible also if the judge determines that the evidence is "otherwise independently admissible," *Commonwealth v. Arana*, 453 Mass. 214, 220-221 (2009), serves a purpose other than to corroborate the victim's testimony, and its probative value outweighs its prejudicial effect. See *Commonwealth v. Dargon*, 457 Mass. 387, 399-400 (2010). See also *Commonwealth v. Aviles*, 461 Mass. 60, 67-71 (2011).

[14]See *Commonwealth v. Arana, supra* at 227 (admitting such investigative evidence despite its first complaint implications because it responded to "the defendant's theory that the complainants and their parents were motivated to pursue these charges to support their lawsuit, and the police were complicit in this effort").

[15]The complainant's testimony as to whom he made disclosures after telling the elder is independently admissible if it serves a purpose other than to bolster his testimony and its probative value outweighs its prejudicial effect. See *Commonwealth v. Dargon, supra.*

not be able to testify either to the fact or to the details of his complaint to the elder.

To the extent first complaint testimony is admitted, appropriate limiting instructions should be given to the jury. Such testimony may be considered only "to establish the circumstances in which the complainant first reported the alleged offense, and then to determine whether that first complaint either supports or fails to support the complainant's own testimony about the crime," and the jury "may not consider this testimony as evidence that the assault in fact occurred." *Id.* at 247-248.

*Conclusion.* For the foregoing reasons, the defendant's convictions are reversed, the verdicts are set aside, and the case is remanded for a new trial in accordance with this opinion.

*So ordered.*