NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13351

COMMONWEALTH  vs.  OSCAR DELOSSANTOS.[1]


Essex.     March 8, 2023. – June 13, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt, & Georges, JJ.


Firearms.  Constitutional Law, Admissions and confessions, Waiver of constitutional rights, Voluntariness of statement, Search and seizure.  Waiver.  Evidence, Admissions and confessions, Voluntariness of statement.  Practice, Criminal, Motion to suppress, Admissions and confessions, Waiver, Voluntariness of statement, Affidavit.  Search and Seizure, Motor vehicle.



Complaints received and sworn to in the Newburyport Division of the District Court Department on January 20, 2017, and June 13, 2017.

A pretrial motion to suppress evidence was heard by Peter F. Doyle, J.; the cases were tried before Allen G. Swan, J.; and a motion for a new trial was heard by Doyle, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.


Matthew Spurlock, Committee for Public Counsel Services, for the defendant.

---

[1] As is our practice, we use the defendant's name as it appears on the complaint.

Kathryn L. Janssen, Assistant District Attorney, for the Commonwealth.

CYPHER, J.  The defendant, Oscar Delossantos, was charged with one count of carrying a firearm without a license pursuant to G. L. c. 269, § 10 (a), one count of carrying a loaded firearm without a license pursuant to G. L. c. 269, § 10 (n), and one count of disorderly conduct pursuant to G. L. c. 272, § 53.  In a pretrial motion, the defendant sought to suppress "all evidence and statements seized" by police as a result of "the unlawful search and seizure[]" of the defendant.  Following an evidentiary hearing, the defendant's motion to suppress was denied, as the judge found that the defendant knowingly, intelligently, and voluntarily waived his Miranda rights after, as the judge further found, the defendant was given "the full compl[e]ment of Miranda warnings (in English and in Spanish)."

At trial, the jury convicted the defendant of carrying a firearm without a license, and he was sentenced to eighteen months in a house of correction.[2]  The defendant filed a motion to file a late notice of appeal, which was allowed by a single justice of the Appeals Court.  A stay of the appellate proceedings was subsequently entered as the defendant filed a

---

[2] The judge granted the defendant's motion for a required finding of not guilty as to the disorderly conduct charge, and the jury found the defendant not guilty of carrying a loaded firearm without a license.

postconviction motion for a new trial.  The motion was denied

following a nonevidentiary hearing, and the defendant filed a

timely appeal.  In a consolidated appeal, a panel of the Appeals

Court affirmed the defendant's conviction and the denial of his

motion for a new trial in an unpublished memorandum and order

pursuant to its rule 23.0.[3]  Commonwealth v. Delossantos, 101

Mass. App. Ct. 1115 (2022).  We granted the defendant's petition

for further appellate review.

This case presents the question whether the defendant

waived a claim regarding the adequacy of the Miranda warnings

provided to him in Spanish, where the Commonwealth argues that

the defendant failed to set forth with particularity the grounds

on which he sought to suppress his postarrest statements to

police.  Where we conclude that the Commonwealth has failed to

demonstrate beyond a reasonable doubt that the defendant in fact

knowingly, intelligently, and voluntarily waived his Miranda

rights, and that the defendant did not waive the issue, the

defendant's conviction must be vacated.[4]

---

[3] The defendant filed a motion to reconsider the decision
pursuant to Mass. R. A. P. 27, as appearing in 481 Mass. 1656
(2019), which the panel denied.

[4] Because we conclude that the defendant did not waive the
Miranda warning issue and that the judge erred in denying the
defendant's motion to suppress his postarrest statements, we
need not reach the arguments raised in the motion for a new
trial, i.e., whether trial counsel was ineffective for allegedly
"failing to hold the Commonwealth to its burden to establish"

Background.  We summarize the facts as found by the motion judge, following an evidentiary hearing on the defendant's motion to suppress, supplemented by undisputed facts from the hearing.  See Commonwealth v. Pinto, 476 Mass. 361, 362 (2017).

Shortly after 10 P.M. on January 19, 2017, Officer David Noyes of the Amesbury police department was on routine patrol in Amesbury when he observed a gray Honda motor vehicle "roll through" a stop sign and take a quick right turn without using a directional signal.  Noyes observed that the license plate on the vehicle was secured with only one screw, prompting him to turn around and follow the vehicle in his police cruiser.[5]  Noyes called dispatch with the license plate number for a registry query.  At that time, however, Noyes did not activate the lights of his cruiser.

Another officer of the Amesbury police department, Officer Neil Moody, was parked at a local business when the gray Honda passed him.  Moody, having heard Noyes's request for a registry query on the gray Honda, used the computer in his cruiser to conduct a registration query of the vehicle, which revealed that it was registered to a male owner whose license had expired and

_____

that the defendant received accurate and complete Miranda warnings in Spanish.

[5] Noyes was in a "ghost cruiser," i.e., a police cruiser that did not appear to be marked fully until headlights "hit it."

was nonrenewable.  Moody saw that the driver of the vehicle was a male, prompting him to pursue the vehicle and activate the blue lights of his cruiser.

As Moody was in pursuit, Noyes followed behind.[6]  The vehicle continued about one-tenth of a mile, passing numerous open parking spots without stopping.  The vehicle entered a parking area of a nearby convenience store and parked in two spaces, one of which was a handicap space.  Both front doors of the vehicle opened quickly.  The driver and the defendant, who was seated in the front passenger's seat, got out of the vehicle and continuously looked at the pursuing officers as they quickly walked in opposite directions away from the vehicle and the convenience store.  Moody then parked behind the vehicle, and Noyes soon thereafter pulled up next to him.[7]  Seeing both men quickly get out of the vehicle, the officers believed they were on the verge of fleeing the scene.

---

[6] Noyes still had not activated the lights of his cruiser. He testified on cross-examination that he was not in pursuit of the vehicle, but merely was trying to follow it, as he had been given a description by dispatch about the vehicle and was trying to confirm that information.  Noyes estimated that when he turned around to follow the vehicle, he was 900 feet behind Moody.

[7] Moody and Noyes were not in communication during the pursuit of the vehicle.  Moody did not know Noyes was following behind him.  Once Noyes pulled up next to Moody, who had already stopped the vehicle, Noyes saw that the vehicle matched the description provided by dispatch.

As a result, both officers got out of their vehicles; Moody "painted" the defendant with a Taser gun, and Noyes told the driver to stop.[8]  Noyes told the driver and the defendant multiple times to return to the vehicle, which they did after a lot of "back and forth."  On returning to the vehicle, both the driver and the defendant were ordered to put their hands on the dashboard.  Each, however, took his hands off the dashboard multiple times.  The defendant placed his hands near his waist, while the driver continued to reach with his right hand towards the center console and the floor area.  Fearing for their safety, the officers removed the two men from the vehicle.  The defendant was moved to the front of the vehicle and was pat frisked, but no weapons were found.  Officer Scott Peters of the Amesbury police department arrived on the scene and was told to check the area of the vehicle that the driver had "lung[ed] for."  Peters then found a loaded handgun within a bag that was located on the floor of the front passenger's area.

Neither the defendant nor the driver had a license to carry the firearm.  Both men were arrested and were advised of the Miranda rights in English.  Once arrested, the defendant claimed that he could not speak English.  Because none of the officers

---

[8] The term "painted" was described as the officer drawing the Taser gun, pointing it at the defendant, and activating the Taser gun's red laser light.

at the scene spoke Spanish, an officer who was fluent in Spanish, Officer Guillermo of the Salisbury police department, was called to the scene and readvised the defendant of his Miranda rights in Spanish. The defendant then was questioned by police about the firearm. While the driver admitted that the firearm belonged to him, the defendant admitted to trying to conceal the firearm.

Prior to trial, the defendant filed a motion to suppress "all evidence and statements seized" by police, including any postarrest statements made by the defendant during the motor vehicle stop. During the evidentiary hearing on the motion, the Commonwealth presented testimony from Noyes, Moody, and Peters. Noyes testified that Guillermo advised the defendant of his rights in Spanish, and that the defendant appeared to understand those rights once given in Spanish. Moody testified that he knew Miranda warnings were read to the defendant at the scene of his arrest. Peters testified that he provided Miranda warnings to the defendant, but not in Spanish because he did not speak Spanish. The Commonwealth did not call as a witness Guillermo, the officer who, according to the testimony, had given the defendant Miranda warnings in Spanish. Nonetheless, the motion judge found that the defendant was given "the full compl[e]ment of Miranda warnings (in English and in Spanish)" and had

knowingly, intelligently, and voluntarily waived those rights. The defendant's motion then was denied.

Discussion. 1. Waiver of issue. The Commonwealth argues that although the defendant "conceivably raised" the issue whether Miranda warnings were given at all, the issues whether Miranda warnings were required to be given in Spanish and whether they in fact were given in Spanish were not raised properly in the defendant's motion to suppress. "Pursuant to Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004) [(rule 13 [a] [2])], a motion to suppress 'shall state the grounds on which it is based and shall include in separately numbered paragraphs all reasons, defenses, or objections then available, which shall be set forth with particularity'" (emphasis added). Commonwealth v. Dew, 478 Mass. 304, 309 (2017). The Commonwealth argues that where the defendant has failed to do so, the issues whether Miranda warnings were required to be given in Spanish, and whether they in fact were given in Spanish, are waived. We disagree.

The defendant's motion to suppress, albeit in somewhat brief fashion, sought to suppress "any statements" made to police because the defendant "did not waive voluntarily any of [his] rights under the [United States] Constitution or the Massachusetts Declaration of Rights." In his affidavit, the defendant more specifically stated that he "did not knowingly

and voluntarily waive any of [his] constitutional rights" following his arrest, and that "[a]ny statements attributed to [him] in the police report were not accurate and not truly voluntary" (emphases added). In the memorandum of law filed in support of his motion, the defendant further argued that he did not receive Miranda warnings, as "[n]otably absent from the [a]rrest [r]eport [was] whether any 'Miranda' warnings were administered in Spanish to the [defendant] before questioning ensued."

According to the findings of the motion judge, the defendant spoke English up until his arrest. The motion judge found that once arrested, the defendant "claimed" that he could not speak English. The Commonwealth was aware that the defendant had challenges with speaking English, as the prosecutor had elicited testimony from one of the officers, Noyes, on direct examination that Guillermo specifically was called to the scene to provide the defendant with Miranda warnings in Spanish. In fact, on direct examination, the prosecutor specifically asked Noyes if the defendant appeared to understand the Miranda warnings once they were given to him in Spanish by Guillermo, to which Noyes responded, "Yes."

A defendant's waiver of his or her Miranda rights must be made knowingly, intelligently, and voluntarily. Commonwealth v. Hoyt, 461 Mass. 143, 153 (2011). The Commonwealth is aware that

it bears "the 'particularly heavy burden' of proving beyond a reasonable doubt that the defendant's Miranda waiver was [in fact] valid." Commonwealth v. Tremblay, 480 Mass. 645, 655 (2018), quoting Hoyt, supra at 152. In doing so, the Commonwealth always must demonstrate not only what warnings were provided to the defendant, but also that the defendant understood such warnings. See Commonwealth v. The Ngoc Tran, 471 Mass. 179, 186 n.6 (2015). See also Commonwealth v. Garcia, 379 Mass. 422, 429 (1980) ("A confession can be voluntary in the legal sense only if the suspect actually understands the import of each Miranda warning"). Where the Commonwealth bears a particularly heavy burden in demonstrating a valid waiver of Miranda protections, and where the Commonwealth was aware of the defendant's challenges with the English language, the Commonwealth was on full notice that the defendant's challenge to the over-all sufficiency of his Miranda warnings necessarily would include a challenge to the Commonwealth's proof that adequate Miranda warnings actually were provided in Spanish. See Commonwealth v. Vasquez, 482 Mass. 850, 864 (2019), quoting Commonwealth v. Vuthy Seng, 436 Mass. 537, 544, cert. denied, 537 U.S. 942 (2002) (Miranda warnings must be provided in "language which [a defendant] can comprehend and on which [a defendant] can knowingly act").

The Commonwealth knew that the defendant's ability to speak English was an issue, as evidenced by its direct examination of Noyes, and thus it had a full opportunity to present whatever facts it deemed relevant at the motion to suppress hearing.  See Commonwealth v. Santosuosso, 23 Mass. App. Ct. 310, 314 (1986).  We conclude that the defendant placed the Commonwealth on sufficient notice of the issue whether proper Miranda warnings were provided in Spanish following the defendant's arrest.

Despite our holding that the defendant satisfied the particularity requirement of rule 13 (a) (2), we take this opportunity to review this court's previous holding in Commonwealth v. Mubdi, 456 Mass. 385, 389-391 (2010).  In Mubdi, we held that if the Commonwealth seeks to challenge the particularity of a defendant's motion to suppress and fails to file either a motion for a more particularized affidavit or, alternatively, a motion to deny, without a hearing, the defendant's motion to suppress for failure to provide fair notice under rule 13 (a) (2), then the Commonwealth waives any objection to the particularity requirement of rule 13 (a) (2). Id. at 390-391.

Rule 13 (a) (2) serves two practical purposes.  Mubdi, 456 Mass. at 389-390.  It "alerts the judge and the Commonwealth to the suppression theories at issue, and allows the Commonwealth to limit its evidence to these theories."  Dew, 478 Mass. at

309, quoting Commonwealth v. Silva, 440 Mass. 772, 781 (2004). Sufficient detail in the defendant's motion to suppress and accompanying affidavit allows the prosecution to receive fair notice "of the particular search or seizure that the defendant is challenging, so that the prosecution may determine which witnesses it should call and what evidence it should offer to meet its burden of proving" the constitutionality of the relevant search or seizure. Mubdi, supra at 389. The degree of detail that ultimately is required by rule 13 (a) (2), however, is evaluated with the rule's two practical purposes in mind. Id. at 390.

The practice of placing the burden on the Commonwealth to challenge the defendant's failure to satisfy the particularity requirement of rule 13 (a) (2), in order to avoid waiver of the issue, aligns with neither the rule's two practical purposes, nor the rule's explicit language, which unambiguously places the burden for particularity in a motion to suppress on a defendant. See Mass. R. Crim. P. 13 (a) (2) ("A pretrial motion shall state the grounds on which it is based . . . with particularity. . . . Grounds not stated which reasonably could have been known at the time a motion is filed shall be deemed to have been waived").

The purpose of the rule is to provide notice to the judge and the Commonwealth of what is at issue in the defendant's motion to suppress, so that the Commonwealth is not forced to

intuit and predict the multitude of challenges that a defendant could make to a search or seizure. See Commonwealth v. Rogers, 444 Mass. 234, 250 n.3 (2005) (Greaney, J., dissenting) (defendant must state grounds for suppression with particularity so Commonwealth need not unnecessarily extend length of suppression hearing by presenting evidence on issues not raised by defendant). Therefore, we overturn our previous decision in Mubdi, and no longer require that the Commonwealth file either a motion for a more particularized motion to suppress or affidavit, or alternatively a motion to deny the defendant's motion to suppress without a hearing, in order to preserve a challenge to the particularity of a defendant's motion to suppress. We caution defense counsel across the Commonwealth that the burden of compliance with the particularity requirement of rule 13 (a) (2) falls on the defendant alone, as it had been prior to this court's decision in Mubdi. Compare Commonwealth v. Lodge, 431 Mass. 461, 473-474 & n.12 (2000) (where defendant did not raise in motion to suppress, or accompanying affidavit, issue whether search for weapon was outside curtilage of apartment, such issue was waived), with Commonwealth v. Douglas, 472 Mass. 439, 444 n.5 (2015) (Commonwealth's contention that motions to suppress should have been dismissed for failure to comply with particularity requirement of rule 13 [a] [2] was waived because of Commonwealth's failure to file motion before

suppression hearing for denial of suppression motions or for more particularized motions from defendant). Overbroad and bare assertions in a motion to suppress will not satisfy the particularity requirement of rule 13 (a) (2), and absent a showing of cause, grounds that reasonably could have been known at the time the motion to suppress was filed and are not stated with particularity by the defendant will be waived irrespective of the Commonwealth's failure to file a motion for a more particularized motion or affidavit. See Mass. R. Crim. P. 13 (a) (2).

2. Defendant's waiver of Miranda warnings. Where the defendant did not waive the issue whether Miranda warnings were properly given in Spanish, we next assess whether the Commonwealth proved beyond a reasonable doubt that the defendant waived his Miranda rights knowingly, intelligently, and voluntarily. "In reviewing a judge's determination regarding a valid waiver of Miranda rights and voluntariness, we 'accept[] the judge's subsidiary findings of fact absent clear error, give[] substantial deference to the judge's ultimate findings and conclusions of law, but independently review[] the correctness of the judge's application of constitutional principles to the facts found.'" Commonwealth v. Vao Sok, 435 Mass. 743, 751 (2002), quoting Commonwealth v. Mello, 420 Mass. 375, 381 n.8 (1995).

"In Miranda[ v. Arizona, 384 U.S. 436 (1966)], the United States Supreme Court held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination" (quotation and citation omitted). Vasquez, 482 Mass. at 861-862. "These procedural safeguards mandate that an accused must be warned that he or she 'has a right to remain silent, that any statement he [or she] does make may be used as evidence against him [or her], and that he [or she] has a right to the presence of an attorney, either retained or appointed.'" Id. at 862, quoting Vuthy Seng, 436 Mass. at 543.

As discussed supra, the Commonwealth bears the particularly heavy burden of proving beyond a reasonable doubt that the defendant knowingly, intelligently, and voluntarily waived his Miranda rights. See Tremblay, 480 Mass. at 655. "In deciding whether a defendant's waiver of the rights described in the Miranda warning is valid, 'a court must examine the totality of the circumstances, including the characteristics of the accused and the details of the interrogation.'" Hoyt, 461 Mass. at 153, quoting Commonwealth v. Silva, 388 Mass. 495, 501 (1983). "The question [of waiver] is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights

delineated in the <u>Miranda</u> case." <u>Hoyt</u>, <u>supra</u>, quoting <u>North Carolina</u> v. <u>Butler</u>, 441 U.S. 369, 373 (1979).

Here, the Commonwealth has failed to prove beyond a reasonable doubt that the defendant's waiver of his Miranda rights was valid because it failed to call Guillermo, the officer who actually provided Miranda warnings in Spanish to the defendant. Unless Miranda warnings are provided in a language that the defendant actually can comprehend, the defendant cannot make a knowing, intelligent, and voluntary waiver of his Miranda rights. See <u>Vuthy Seng</u>, 436 Mass. at 544. Because none of the officers initially present at the scene of the defendant's arrest could speak Spanish, the officers were forced to call Guillermo to the scene. While the non-Spanish-speaking officers testified that they heard Guillermo provide the defendant with Miranda warnings in what appeared to be Spanish, and that the defendant appeared to understand Guillermo's warnings, none of this testimony resolved the question; because of their inability to speak Spanish, none of these witnesses properly could testify to the content of the Miranda warnings given. Cf. <u>Commonwealth</u> v. <u>Perez</u>, 411 Mass. 249, 256 (1991) (where officer who did not understand Spanish testified that Spanish-speaking officer had properly administered to defendant Miranda rights in Spanish, any argument against such practice was of "no consequence" where

ample additional evidence independently corroborated defendant's
receipt and understanding of Miranda rights in Spanish).

A translation of Miranda warnings need not be "word for
word," Vasquez, 482 Mass. at 864, and a defendant has an
opportunity to discredit the translation of Miranda warnings, or
alternatively to discredit the interpreter who provided such
warnings, in order to demonstrate the lack of a knowing,
intelligent, and voluntary waiver of his or her Miranda rights.
See Commonwealth v. Ardon, 428 Mass. 496, 500 (1998).  The
Commonwealth's shortcomings in deciding not to call Guillermo,
and instead choosing to rely only on the testimony of other
officers with no ability to speak Spanish, render the evidence
insufficient for us to conclude beyond a reasonable doubt that
complete and accurate Miranda warnings were provided to the
defendant in Spanish, and that the defendant knowingly,
intelligently, and voluntarily waived those rights.[9]  Cf. Perez,
411 Mass. at 255-256 (Commonwealth demonstrated valid Miranda
waiver beyond reasonable doubt where judge could verify complete
and accurate Miranda warnings were provided in Spanish because

---

[9] Guillermo testified at trial that he had been speaking
Spanish for thirty-five years and did not struggle with
translating the Miranda warnings to Spanish.  This does not
alter our conclusion, however, because when reviewing the denial
of the defendant's motion to suppress, we review only the
evidence presented to the motion judge, not evidence adduced at
trial.  See Commonwealth v. Rivera, 441 Mass. 358, 367 (2004).

defendant was given cards on which such warnings were printed, defendant indicated understanding of what he read on cards, and judge independently could verify that warnings on cards were complete and accurate Miranda warnings in Spanish). Therefore, the admission of the defendant's incriminating postarrest statements was erroneous.

Where the Commonwealth introduced the defendant's statements at trial, in violation of his constitutional rights, we must examine whether the erroneous admission was harmless beyond a reasonable doubt. See Commonwealth v. Dagraca, 447 Mass. 546, 552 (2006). Such review "requires us to consider, among other factors:

> '[1] the importance of the evidence in the prosecution's case; [2] the relationship between the evidence and the premise of the defense; [3] who introduced the issue at trial; [4] the frequency of the reference; [5] whether the erroneously admitted evidence was merely cumulative of properly admitted evidence; [6] the availability or effect of curative instructions; and [7] the weight or quantum of evidence of guilt.'"

Commonwealth v. Seino, 479 Mass. 463, 467-468 (2018), quoting Dagraca, supra at 553.

"In short, we analyze the case to see whether the error might have had an effect on the jury or contributed to the verdicts, and whether the Commonwealth's evidence was '"merely cumulative" of evidence properly before the jury,' Commonwealth v. Sinnott, [399 Mass. 863, 872 n.8 (1987),] or was overwhelming

without the erroneously admitted evidence." Dagraca, 447 Mass. at 553, citing Perez, 411 Mass. at 260.

Among the elements required to sustain a conviction under G. L. c. 269, § 10 (a), the Commonwealth was required to prove that the defendant knowingly possessed the firearm. See Commonwealth v. DeJesus, 489 Mass. 292, 298 (2022). See also Commonwealth v. White, 452 Mass. 133, 136 (2008). According to the trial testimony, the defendant, following his arrest at the scene, admitted to officers that he did not possess a license to carry the firearm and, more importantly, that he was trying to hide the firearm. In its closing, the Commonwealth emphasized the importance of the defendant's incriminating statements because of the defendant's "interesting turn of phrase," i.e., that he was trying to "hide" the firearm. The Commonwealth argued in closing that the defendant's intent to hide the firearm was important evidence of his knowledge and possession of the firearm. Where the defendant's statements were not cumulative of other evidence presented, and the evidence of the defendant's knowing possession of the firearm was not overwhelming without the admission of the defendant's incriminating statements, the erroneous admission of the defendant's statements was not harmless beyond a reasonable doubt. See Commonwealth v. Monroe, 472 Mass. 461, 473-474 (2015) (admission of defendant's involuntary statements not

harmless beyond reasonable doubt where defendant's admission to possessing knife limited defense counsel's strategy, boosted victims' credibility, and served as prominent part of Commonwealth's case that defendant assaulted three teenage victims at knifepoint).

Conclusion.  Accordingly, because the admission of the defendant's postarrest statements was error, the judgment is vacated and the verdict is set aside.

So ordered.