NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11543


COMMONWEALTH  vs.  MATTHEW J. SHERIDAN.



Norfolk.      November 6, 2014. - February 27, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.



Controlled Substances.  Constitutional Law, Search and seizure,
    Probable cause.  Search and Seizure, Motor vehicle,
    Threshold police inquiry, Probable cause, Inevitable
    discovery, Plain view, Search incident to lawful arrest.
    Threshold Police Inquiry.  Probable Cause.




Complaint received and sworn to in the Quincy Division of
the District Court Department on June 21, 2011.

A pretrial motion to suppress evidence was heard by Robert
P. Ziemian, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Gants, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by him to
the Appeals Court.  The Supreme Judicial Court granted an
application for direct appellate review.


Paul R. Rudof, Committee for Public Counsel Services, for
the defendant.
Pamela Alford, Assistant District Attorney, for the
Commonwealth.

LENK, J.   In the early morning hours of June 21, 2011, police officers stopped the defendant, Matthew J. Sheridan, for driving a minivan with an unilluminated headlight.  During the stop, the officers saw in the vehicle a portion of what an officer identified as "about a [one]-ounce bag" of marijuana, protruding from under a rumpled T-shirt lying on the floor between the vehicle's two front seats.  The officers ordered the defendant out of the vehicle, handcuffed him, and conducted a search of the minivan.  Lifting the T-shirt, an officer found, in addition to the bag previously partially seen, another one-ounce bag of marijuana, and a third, smaller bag of marijuana.  The defendant was arrested and taken to the police station.  After he was booked on charges of possession of marijuana with intent to distribute, officers seized and searched his cellular telephone, finding several text messages that they identified as consistent with sales of marijuana.

The defendant moved to suppress the marijuana seized from his vehicle and the text messages found on his telephone.  In Massachusetts, "possession of one ounce or less of marihuana [is] only . . . a civil offense," punishable by a "civil penalty of one hundred dollars and forfeiture of the marihuana." G. L. c. 94C, § 32L.  Because it is not a crime, police

observation of one ounce or less of marijuana is insufficient, by itself, to give rise to the probable cause necessary to conduct a search. See Commonwealth v. Daniel, 464 Mass. 746, 752 (2013) (Daniel). A judge of the District Court nevertheless denied the defendant's motion to suppress. He concluded the police were permitted to enter the minivan to effect the forfeiture of the marijuana that they saw, and that the discovery of the additional marijuana, the defendant's arrest, and the subsequent seizure and search of the defendant's telephone followed from the initial lawful entry into the defendant's vehicle. We conclude that the search of the defendant's vehicle and of the cellular telephone violated his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. Accordingly, the judge's order denying the defendant's motion to suppress must be reversed.

1. Background. a. Facts. We summarize the relevant facts as found by the District Court judge, supplemented by uncontroverted evidence derived from the testimony of witnesses that the judge explicitly or implicitly credited. See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).

Sean Glennon, an officer of the Quincy police department, initiated the stop of the defendant's minivan at approximately 2:50 A.M. Glennon approached the driver's side window and requested the defendant's driver's license and registration. Glennon observed that the defendant looked extremely nervous; his hands shook as he fumbled for his driver's license and registration, and, although he readily produced his license, he at first provided an expired registration. He eventually provided a current valid registration.

Scott Walker, a State police trooper who happened to be patrolling the area, also had stopped at the scene shortly after Glennon stopped the defendant's vehicle. As Glennon was conversing with the defendant, Walker approached the vehicle's passenger side window. Walker observed, on the floor between the vehicle's two front seats, the corner of a plastic sandwich bag that appeared to contain marijuana, protruding from under a T-shirt. Walker discreetly indicated to Glennon the apparent presence of marijuana.

Glennon ordered the defendant to step out of the vehicle and performed a patfrisk, during which he found $285 in cash and a cellular telephone. After returning the money and the telephone to the defendant, Glennon asked whether there was

"anything illegal in the car." The defendant answered, "No." Glennon requested permission to search the vehicle; the defendant declined. Glennon then informed the defendant that Walker had seen a bag of marijuana in the vehicle. The defendant "slumped forward" and a "dejected type of look" crossed his face.

Glennon handcuffed the defendant, whose hands by that point were "shaking uncontrollabl[y]," and began to search the vehicle. Glennon saw a bag he described as "consistent with about a [one]-ounce bag" of marijuana, partially visible under a T-shirt on the floor between the vehicle's front seats. He lifted the T-shirt, and observed two additional bags of marijuana, one approximately equal in size to the first bag, and one smaller. The officers searched the remainder of the minivan, and also requested a narcotics-trained canine to perform a sniff search, but located no additional drugs or contraband and no other evidence of illegal activity. The defendant was transported to the police station, where he was booked on charges of possession with intent to distribute marijuana. During booking, officers again seized the defendant's money and cellular telephone. Glennon viewed text messages stored on the telephone, and saw "several text messages

that appeared to be orders to purchase marijuana."

b. Procedural history. The defendant was charged with possession with the intent to distribute marijuana, in violation of G. L. c. 94C, § 32, and a civil motor vehicle infraction based on the broken headlight. The defendant filed a motion to suppress all of the physical evidence seized as a result of the search and the arrest, including the marijuana, the telephone, and the text messages found on the telephone. The defendant argued that the officers lacked probable cause to believe that the minivan contained more than one ounce of marijuana, rendering the search impermissible. A District Court judge held an evidentiary hearing on the defendant's motion, at which both Glennon and Walker testified.

The judge denied the motion to suppress. He observed that "[t]he issue of whether the police could ascertain whether the initial bag of marijuana, because it was partially hidden, contained more or less than one [ounce] of material was . . . contested . . . at the hearing." The judge concluded, however, that "it is irrelevant whether Glennon or Walker could make such a determination." Stating that, "while possession of less than [one ounce] of marijuana is not criminal, any quantity is 'contraband,'" the judge determined that "the police are

entitled to issue an 'exit order' to completely ensure their safety (and for convenience) while they are in a vulnerable position reaching into the vehicle to seiz[e] the drugs." Furthermore, the judge concluded that, "once the police removed the shirt to seize the initial bundle of marijuana, a second one ounce bag as well as a smaller bag were revealed," giving rise to probable cause to arrest the defendant for possession of a criminal quantity of marijuana. Finally, the judge concluded that "[t]he seizure of the [tele]phone [was] incident to the arrest," and that "the information obtained [from the search of the telephone's contents] [was] allowed as inevitable discovery during the investigation of whether the more than one [ounce] of marijuana were possessed with intent to distribute."

The single justice granted the defendant's application for leave to file an interlocutory appeal to the Appeals Court pursuant to Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996), and also allowed the defendant to amend his filing to include a challenge to the search of the cellular telephone. We allowed the defendant's application for direct appellate review.

2. Discussion. a. Standard of review. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary

findings of fact absent clear error but conduct an independent review of [the judge's] ultimate findings and conclusions of law" (quotation omitted).  Daniel, 464 Mass. at 748-749.

b.  The search of the vehicle.  i.  The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures."  Article 14 of the Massachusetts Declaration of Rights similarly protects against "unreasonable searches, and seizures, of [one's] person, [one's] houses, [one's] papers, and all [one's] possessions."  While "[g]enerally, a warrant is required" for a search to be reasonable, "several well-recognized exceptions exist." Commonwealth v. Cruz, 459 Mass. 459, 473 (2011) (Cruz).  "Under the automobile exception, a warrantless search of an automobile is permitted when police have 'probable cause to believe that a motor vehicle on a public way contains contraband or evidence of a crime, and exigent circumstances make obtaining a warrant impracticable.'"  Id. at 473-474, quoting Commonwealth v. Cast, 407 Mass. 891, 901 (1990).  "[W]hen an automobile is stopped in a public place with probable cause, no more exigent circumstances are required . . . beyond the inherent mobility of an automobile itself to justify a warrantless search of the

vehicle."  Commonwealth v. Motta, 424 Mass. 117, 124 (1997).

In 2008, voters in the Commonwealth approved a ballot initiative entitled "An Act establishing a sensible State marihuana policy."  See St. 2008, c. 387.  The initiative established that "possession of one ounce or less of marihuana shall only be a civil offense, subjecting an offender who is eighteen years of age or older to a civil penalty . . . and forfeiture of the marihuana, but not to any other form of criminal or civil punishment or disqualification."  G. L. c. 94C, § 32L.

In Cruz, 459 Mass. at 462, we first confronted the decriminalization initiative's impact on the automobile exception.  There police officers, while conducting an otherwise permissible vehicle stop, smelled "a 'faint odor' of burnt marijuana."  Id.  Before the enactment of the decriminalization initiative, we had held "that the odor of burnt marijuana is sufficient to believe that there is contraband in the car."  Id. at 474, citing Commonwealth v. Garden, 451 Mass. 43, 47 (2008). The validity of a warrantless search, however, is determined according to the same standard used by a magistrate in deciding to issue a search warrant.  Cruz, supra at 475, citing Whiteley v. Warden, 401 U.S. 560, 566 (1971).  In Massachusetts, the

standard for the issuance of a search warrant demands probable cause to believe that a crime is being committed. Cruz, supra at 475-476. Because the ballot initiative transformed the possession of one ounce or less of marijuana into a civil infraction, not a crime, we concluded in Cruz that a warrantless search of a vehicle is permissible only if police can establish "probable cause to believe that a criminal amount of contraband was present in the car." Id. at 476 (emphasis in original).

Similarly, in Daniel, supra at 749, police smelled "the odor of freshly burnt marijuana" while conducting a traffic stop. When an officer asked whether the vehicle's occupants had any marijuana, a passenger gave the officer two small bags, collectively containing less than one ounce of marijuana. Id. The officer then ordered the occupants out of the vehicle and searched it. Id. at 750. During the search, he found an unlicensed firearm in the glove compartment. Id.

We held that the officer lacked probable cause to search the vehicle. Id. at 751-752. Possession of the quantity of marijuana contained in the two small bags "constituted a civil infraction, not a criminal offense," id. at 751, and the vehicle's occupants "surrendered [the] bags . . . at the request of the officer." Id. Consequently, "[a]bsent articulable facts

supporting a belief that either occupant of the vehicle possessed a criminal amount of marijuana, the search was not justified by the need to search for contraband."  Id. at 752.

Cruz and Daniel control the outcome of this case.  Glennon testified that the bag that was partially visible under the T-shirt was "consistent with about a [one]-ounce bag" of marijuana.  Because the ballot initiative decriminalized "possession of one ounce or less" of marijuana, G. L. c. 94C, § 32L, the officer saw evidence of a civil infraction, not a criminal offense.  Absent articulable facts supporting a belief that the vehicle contained an additional, criminal quantity of marijuana, the officers lacked probable cause to believe that a crime was being committed, and the search was impermissible.

ii.  The Commonwealth offers two reasons in support of its argument that the officers had probable cause to believe that a criminal amount of marijuana was present in the vehicle.

The Commonwealth's first argument hinges on the word "about."  The Commonwealth contends that, because "'[a]bout' an ounce would include amounts both more and less than an ounce," and because possession of more than an ounce of marijuana would constitute a criminal offense, the officers had probable cause to search the vehicle.

The standard for probable cause demands that the officers know "enough facts and circumstances 'to warrant a person of reasonable caution in believing'" the vehicle contained a criminal quantity of marijuana.  Commonwealth v. Welch, 420 Mass. 646, 650 (1995), quoting Commonwealth v. Cast, 407 Mass. at 895.  Here Glennon testified that, based on his training and experience, he identified the amount of marijuana contained in the bag as "about . . . [one]-ounce," a noncriminal quantity. The Commonwealth identifies no facts or circumstances within the officers' knowledge that would have led a reasonable person to believe that Glennon underestimated the amount of marijuana contained in the bag.  That belief would be particularly unwarranted because the officers could only see a small portion of the bag, the remainder being covered by the T-shirt.  The imprecision in Glennon's estimate at best gives rise only to speculation that the quantity exceeded one ounce.  It does not establish probable cause.

Next, the Commonwealth contends that, even if the observation of the marijuana alone were not sufficient to give rise to probable cause, the defendant's nervousness upon being stopped tipped the scales to probable cause.  In Cruz, 459 Mass. at 467, the Commonwealth similarly contended that the odor of

burnt marijuana, when coupled with "the stop's location, a high crime neighborhood; the defendant's nervous demeanor; and the occupants' sharing of a cigar" allegedly used to cover the odor of marijuana were sufficient to establish probable cause. Likewise, in Daniel, 464 Mass. at 749, an officer testified that, when he approached the stopped vehicle, he observed the defendant "sitting in the passenger seat" with "his head down and his shoulders . . . 'rocking back and forth.'" The officer in Daniel, supra at 750, also testified that he regarded the defendant's conduct in emptying his pockets and placing the contents on the dashboard as "significant . . . because it was not common," and that it suggested to him that the defendant was "trying to conceal something." In both cases, we determined that manifestations of allegedly nervous or furtive behavior, in conjunction with indications that the defendants possessed some amount of marijuana, were not sufficient to establish probable cause to believe that the defendants possessed a criminal quantity. "It is common," we observed, "and not necessarily indicative of criminality, to appear nervous during even a mundane encounter with police." Cruz, 459 Mass. at 468. Because the Commonwealth identifies no additional factors supporting probable cause beyond the defendant's apparent

nervousness and the noncriminal quantity of marijuana that the officers observed, we reach the same conclusion here.

iii.  The decriminalization initiative transformed possession of one ounce or less of marijuana into a civil offense, subjecting the possessor to "a civil penalty" and "forfeiture of the marihuana."  G. L. c. 94C, § 32L.  The District Court judge determined that the police officers were permitted to order the defendant out of his vehicle, and then to enter the vehicle themselves to effect this forfeiture.  The Commonwealth echoes this argument on appeal, asserting that "[t]he limited entry was reasonable as it effected the forfeiture as envisioned by G. L. c. 94C, § 32L."

In evaluating this argument, it is important to distinguish an officer's power to seize the marijuana from the officer's power to make an entry into the vehicle to effect that seizure. We agree with the District Court judge's determination that any quantity of marijuana is "contraband" and is subject to seizure. We disagree, however, with the judge's conclusion that, to effect that seizure, the officers were entitled to make an entry into the vehicle that -- lacking probable cause -- they otherwise would be prohibited from making.

The Commonwealth contends that the seizure of the marijuana

was proper because it was in "plain view."  "Under our plain view doctrine, a police officer may seize objects in plain view where four requirements are met: (1) the officer is 'lawfully in a position to view the object'; (2) the officer has 'a lawful right of access to the object'; (3) with respect to 'contraband, weapons, or other items illegally possessed, where the incriminating character of the object is immediately apparent' or, with respect to 'other types of evidence . . . where the particular evidence is plausibly related to criminal activity of which the police are already aware'; and (4) the officer 'come[s] across the object inadvertently.'" Commonwealth v. White, 469 Mass. 96, 102 (2014), quoting Commonwealth v. Sliech-Brodeur, 457 Mass. 300, 306-307 (2010).  There is no dispute here that the first and fourth requirements are met:  the officers were lawfully in a position to observe the bag of marijuana, since the bag was visible from outside the vehicle where the officers were positioned in effecting a permissible, routine traffic stop; and the officers came across the marijuana inadvertently, since there is no contention that the officers effected the traffic stop to search for marijuana.

The Commonwealth, however, cannot satisfy the doctrine's second requirement, which demands that the officer have "a

lawful right of access to the object." Commonwealth v. White, supra. In typical plain view cases, officers see and seize an object while conducting a permissible search, pursuant either to a warrant, see Commonwealth v. Sliech-Brodeur, supra at 306, or to an exception to the warrant requirement, see Commonwealth v. White, supra; Commonwealth v. Stack, 49 Mass. App. Ct. 227, 234-235 (2000). In those cases, police officers are already in the process of conducting a permissible search of a certain location (i.e. a vehicle, a house), and the plain view doctrine operates to allow officers to seize an object to which, by virtue of the search, they already have access. In other cases, police officers see, in plain view from a lawful vantage point outside a vehicle, an item that itself gives rise to "probable cause to believe that they would find 'the instrumentality of a crime or evidence pertaining to a crime' in the vehicle." Commonwealth v. Johnson, 461 Mass. 44, 49 (2011), quoting Commonwealth v. Antobenedetto, 366 Mass. 51, 55 (1974). Because the observation gives rise to probable cause to conduct a search, the subsequent entry into the vehicle and seizure of the item is permissible. Commonwealth v. Johnson, supra at 50.

Here, although the officers could see the marijuana from their lawful vantage point outside the minivan, they did not

have a "lawful right to access" it from that vantage point. To seize the marijuana, the police officers had to enter the minivan. Because the observation of a noncriminal quantity of marijuana alone did not give rise to probable cause that the vehicle contained evidence of a crime, the validity of the officers' seizure of the marijuana turns on the existence of some other basis, besides probable cause, to justify the officers' entry into the vehicle.

The Commonwealth characterizes the entry into the minivan as a "limited intrusion," and likens it to the intrusion involved in a police officer's request for license and registration documentation during a routine motor vehicle stop. The analogy is inapposite. In the context of traffic stops, we have never held that officers may routinely enter vehicles to acquire driver's license and registration documents, in the same way that the officers entered the defendant's vehicle here to seize the marijuana. On the contrary, we have stated that, "[g]enerally, the officer may simply direct the driver to retrieve his identification from the vehicle." Commonwealth v. Lopes, 455 Mass. 147, 160 (2009). Only when the officers have "a reasonable basis to believe that [the vehicle's occupants are] armed and dangerous" are police officers permitted to order

the occupants out of the vehicle and then conduct a limited search for the purposes of recovering the identification and registration documents. Id. Cf. Commonwealth v. Pagan, 440 Mass. 62, 68 (2003) (police officers permitted to search "container that they reasonably fear may contain a weapon" before returning it to defendant to locate his identification documentation); Commonwealth v. Lantigua, 38 Mass. App. Ct. 526, 528-529 (1995) (concluding that, where circumstances of search "justifie[d] heightened precautions for the officers' own safety[,] . . . the officers could properly have entered the passenger compartment, including the glove compartment, to retrieve the registration themselves").

Indeed, our jurisprudence has diverged from the United States Supreme Court's Fourth Amendment jurisprudence in that we have held that art. 14 prohibits automatic exit orders during routine traffic stops. Compare Commonwealth v. Gonsalves, 429 Mass. 658, 662-663 (1999), with Pennsylvania v. Mimms, 434 U.S. 106, 109-110 (1977). Instead, we have concluded that a police officer must "have a reasonable suspicion of danger before compelling a driver to leave his motor vehicle." Commonwealth v. Gonsalves, supra at 662. Here the District Court judge acknowledged that, "except for the extreme nervousness of the

defendant, there [were] not present any other factors that would indicate a dangerous situation may exist."  The judge never found that the officers' exit order and the patfrisk of the defendant that followed were based on any reasonable apprehension of danger.  Rather, the record indicates that these events were precipitated solely by the officers' observation of what they believed to be a noncriminal portion of marijuana.  Under these circumstances, the exit order and the patfrisk were impermissible, and the officers' entry into the vehicle to seize the marijuana cannot be justified under the logic that enables police officers to enter a vehicle to recover license and registration documentation in situations where the officer reasonably believes that the driver is armed and dangerous.

Finally, the Commonwealth suggests that the officers' entry into the minivan was permissible under the logic that allows warrantless administrative inspections to enforce certain regulatory schemes.  Such searches, however, are typically confined to "commercial premises" that are "utilized in the context of a 'closely regulated' industry," where "an individual's expectation of privacy" is "particularly attenuated."  Commonwealth v. Tart, 408 Mass. 249, 253-254 (1990).  Where warrantless administrative searches for evidence

of suspected regulatory violations have been upheld, moreover, typically "there is no possibility of criminal action and thus no necessity to comply with the more stringent standards of criminal probable cause" (quotations and citations omitted). Commonwealth v. Frodyma, 386 Mass. 434, 442 (1982). Administrative searches are permissible because they are "conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of crime." United States v. Davis, 482 F.2d 893, 908 (9th Cir. 1973), overruled on other grounds, United States v. Aukai, 497 F.3d 955 (9th Cir. 2007) (en banc). They are not permissible, by contrast, where they serve as a "tool for law enforcement." United States v. $124,570 U.S. Currency, 873 F.2d 1240, 1244 (9th Cir. 1989).

The facts of this case aptly demonstrate how the type of intrusion that occurred here could become a tool for law enforcement to search for evidence of criminal activity despite the absence of probable cause. Contrary to the Commonwealth's characterization, the search went beyond a "limited intrusion" for the "sole purpose of seizing marijuana in [the officers'] plain view." Upon entering the vehicle, the officers did not merely seize the one bag of marijuana that was partially in

plain view under the T-shirt. Instead, they lifted the T-shirt, discovering and then seizing two additional bags. The judge made no factual finding that the officers had to lift the T-shirt to seize the bag, rather than simply grasping the portion of the bag that was partially visible. And although the District Court judge found that, "in addition to the visible one-ounce bag of marijuana, other objects lay underneath the same t-shirt," the judge never found, and nothing in the officers' testimony supports a finding, that the officers had reason to believe that these other objects were other bags of marijuana, rather than innocuous, noncontraband items.

For these reasons, we reject the Commonwealth's contention that the officers here were permitted to effect a "limited intrusion" into the defendant's vehicle to seize the marijuana. The officers observed a noncriminal quantity of marijuana from a lawful vantage point, and might well have informed the defendant that the possession of that marijuana constituted a civil offense, subjecting the possessor to a fine, and that the marijuana was subject to forfeiture. They could have requested that the defendant turn the marijuana over to them.[1] They could

---

[1] We leave to another day an examination of the consequences if the defendant had declined to turn over the marijuana on

also have issued a civil citation, see G. L. c. 94C, § 32N, and pursued the forfeiture of the marijuana, see G. L. c. 94C, § 47. They did not do so. Instead, they entered the vehicle and conducted a search that went beyond even what would be necessary to seize the bag that they had seen. Because they lacked probable cause to believe that the van contained evidence of a crime, we conclude that their entry into the minivan was impermissible.

c. The search of the cellular telephone. Our determination that the search of the defendant's vehicle was impermissible resolves any question whether the subsequent search of the defendant's cellular telephone was permissible. The District Court judge concluded that the additional bags of marijuana that the officers discovered as a result of their entry into the minivan gave rise to probable cause to arrest the defendant; that the seizure of the cellular telephone was permissible as a seizure incident to the defendant's arrest; and that, once the telephone was seized, the search of the text messages contained on the telephone was permissible under the inevitable discovery doctrine. In the District Court judge's analysis, then, the validity of the search of the cellular

request.

telephone ultimately turned on the validity of the officers' entry into the minivan. Because we have determined that the officers' entry into the minivan was impermissible, the thread leading to the search of the text messages is unwound, and the text messages must be suppressed. See, e.g., Commonwealth v. Pietrass, 392 Mass. 892, 900 (1984).

If there were any doubt about that result, the United States Supreme Court has set it to rest. After the District Court judge issued his decision in this case, the United States Supreme Court decided Riley v. California, 134 S. Ct. 2473 (2014). There, the Court held that "the search incident to arrest exception does not apply to cell phones." Id. at 2494. For both of those reasons, the text messages obtained as a result of the search of the defendant's cellular telephone must be suppressed.

3. Conclusion. The decision denying the defendant's motion to suppress evidence obtained as a result of the searches of his vehicle and of the defendant's cellular telephone is reversed. The matter is remanded to the District Court for further proceedings consistent with this opinion.

So ordered.