NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1335                                    Appeals Court

COMMONWEALTH  vs.  DARREN DYETTE.

No. 13-P-1335.

Suffolk.     January 5, 2015. - June 24, 2015.

Present: Katzmann, Sullivan, & Blake, JJ.


Firearms. Practice, Criminal, Required finding, Motion to
     suppress, Harmless error, Argument by prosecutor,
     Instructions to jury. Cellular Telephone. Constitutional
     Law, Search and seizure, Investigatory stop, Reasonable
     suspicion, Probable cause. Search and Seizure, Reasonable
     suspicion, Probable cause, Search incident to lawful
     arrest, Exigent circumstances. Error, Harmless.
     Constitutional Law, Harmless error. Evidence,
     Consciousness of guilt.


     Indictments found and returned in the Superior Court
Department on November 19, 2010.

     A pretrial motion to suppress evidence was heard by D.
Lloyd Macdonald, J., and the cases were tried before him.


     Alexei Tymoczko for the defendant.
     David D. McGowan, Assistant District Attorney (Matthew L.
Feeney, Assistant District Attorney, with him) for the
Commonwealth.


     SULLIVAN, J.  After a jury trial, the defendant, Darren

Dyette, was convicted of possession of a firearm and carrying a

loaded firearm.  See G. L. c. 269, § 10(a), (n).[1]  The defendant
contends on appeal that his motion to suppress was wrongly
denied because (1) the police lacked reasonable suspicion to
conduct an investigatory stop, (2) the stop escalated to an
arrest lacking probable cause when the defendant was ordered to
the ground at gunpoint and handcuffed, and (3) the police lacked
a basis under either the exigency exception or the search
incident to arrest exception to the warrant requirement to
conduct a warrantless search of his cellular telephone (cell
phone) at the scene and after booking.  The defendant also
contends that there was insufficient evidence that he possessed
the firearm.

We conclude that the evidence was sufficient to support the
convictions.  We also conclude that the stop and the arrest were
proper, but that the warrantless search of the cell phone was
unlawful, and that this much of the motion to suppress should
have been allowed.  We also conclude that the error was not
harmless beyond a reasonable doubt.  Accordingly, we reverse the
convictions and remand for further proceedings.

Background.  1.  Motion to suppress.  We recite the motion
judge's factual findings supplemented by the uncontroverted

---

[1] The defendant thereafter pleaded guilty to the second and
subsequent offense portion of the count for possession.  G. L.
c. 269, § 10(d).

evidence at the motion hearing.[2]  On the night of July 3-4, 2010,
four police officers, all members of the youth violence strike
force, were in plain clothes in an unmarked vehicle patrolling
Martin Luther King Boulevard in the Roxbury neighborhood of
Boston.  The officers drove past Washington Park, where a crowd
of people were drinking and shooting off fireworks.  The park
was known to the officers as an area of high firearm activity,
including homicides and other shootings.  They made a U-turn and
circled back to the park.  Although the cruiser was unmarked, it
was a Ford Crown Victoria automobile, a make and model which was
well known in the community as a police vehicle.  The group in
the park noted the officers' presence.

When the officers arrived at the park, it was close to
midnight and the park lights were off.  This indicated to all
the officers that the park was closed, and that all present were
trespassing.  One officer, a former Boston municipal police
officer, knew that the lack of lighting and the late hour meant
that the park was officially closed.

As they pulled to a stop, the officers took note of two men
standing at the far end of a basketball court near a rock wall.
The two men appeared "overly concerned" by the officers'
presence.  After "bouncing around looking" at the officers, the

---

[2] The motion judge was also the trial judge.

two men began to leave the park at a normal pace. They then began to run, colliding with each other as they ran.

All but one of the officers got out of the unmarked car and gave chase on foot. When the officers reached the rock wall behind the basketball court, they saw that the two men had run in different directions into the adjoining wooded area of the park. One of the men, the defendant, wearing a white shirt and baseball cap, ran to the right and the other man, wearing a blue shirt, ran to the left. The officers pursued the defendant to the right, but lost sight of him during the chase for a short time.

At the same time, Officer Steele, who remained in the unmarked car, activated his blue lights and drove to the back of the park to a spot where a person leaving the park on foot would likely exit, while the other officers gave chase on foot. He then turned off his blue lights. After hearing a radio broadcast that one of the two men was headed toward his location, Officer Steele saw the defendant, wearing a black tank top and holding a cell phone near his head,[3] running out of the park. Officer Steele did not recognize the defendant at first, but as they drew closer to one another he recognized the defendant from "numerous encounters, one including a firearm arrest." Officer Steele got out of the car with his gun drawn,

---

[3] The cell phone was described as a "flip phone."

ordering the defendant to the ground. The defendant complied, and was pat-frisked and handcuffed.

The defendant told Steele that he had not been in the park, but had been walking down the street.[4] When asked why he was breathing heavily, the defendant stated that he had been arguing with his girlfriend on his cell phone. Officer Steele took the defendant's cell phone, looked at the call log, and saw that there was an array of numbers and symbols that did not represent a telephone number.

The officers, including Officer Steele, canvassed the area while the defendant was detained by other officers who had arrived on the scene. In a garbage can near the park entrance where the officers saw the defendant emerge, they found the white shirt and white hat that the defendant had been wearing before the chase. The officers also found two loaded firearms near the rock formation where the chase had begun, one to the left, and one located further to the right along the defendant's flight path.

The defendant was arrested, charged with possession of the gun found to the right, and given his Miranda[5] rights at the police station. He spoke with the booking sergeant and denied

---

[4] The officers who chased the defendant also said they saw him run out of the park.

[5] Miranda v. Arizona, 384 U.S. 436 (1966).

that the gun was his. He continued to claim that he was arguing with his girlfriend before he saw the officers, and stated that she was also the person he had called from the booking area. The defendant's cell phone call log was examined by the booking sergeant some five hours after the arrest. The booking sergeant testified that it could take several days to get a warrant, and that he was concerned that incoming calls (there had been three) would "push out" previous calls on the call log, which he believed permitted only a limited number of calls. The log showed that the defendant was not talking with his girlfriend as he had claimed, and that she was not the person whom he had called from the booking area, as he also claimed.

2. _Trial testimony_. The evidence at trial was substantially the same as the evidence offered at the suppression hearing, albeit offered in greater detail. No reference was made to the failure to obtain a warrant, or to the defendant's prior firearms offense, but the Commonwealth was permitted to introduce evidence that Officer Steele recognized the defendant. The defendant stipulated that the hat and shirt were his; the Commonwealth introduced deoxyribonucleic acid (DNA) evidence tying him to the two items. No fingerprints were found on the gun, and no DNA evidence was extracted from the gun. Two photographs of the defendant's cell phone call log were introduced in evidence at trial, and both Officer Steele

and the booking sergeant testified to the defendant's statements that prompted them to check the call log, as well as the contents of the call log, and the discrepancy between the call log and the defendant's representations.

The Commonwealth's theory of the case was that the defendant and his companion fled at the sight of the Crown Victoria in order to evade the police and get rid of the guns, and that the defendant's attempts to change his appearance by discarding his clothes, coupled with lies concerning his presence in the park and the telephone call with his girlfriend, showed that he was guilty. The defense claimed that the defendant was a young man who had had previous experience with the police, that he was trespassing in the park after midnight, that he didn't want to be arrested for trespassing, and that he didn't want to "deal with the cops." The defense maintained that there was no evidence linking the defendant to the gun, and that anyone in the park could have tossed the gun into the defendant's flight path after the officers had already passed the area.

Discussion. 1. Sufficiency of the evidence. The Commonwealth was required to prove beyond a reasonable doubt that the defendant had actual or constructive possession of the

firearm.  Commonwealth v. Romero, 464 Mass. 648, 652 (2013).[6]
"[W]e consider the evidence, together with permissible
inferences from that evidence, in the light most favorable to
the Commonwealth and determine whether any rational trier of
fact could have found the essential elements of the crime beyond
a reasonable doubt."  Commonwealth v. Forte, 469 Mass. 469, 481
(2014) (quotations omitted).  See Commonwealth v. Farnsworth, 76
Mass. App. Ct. 87, 98-99 (2010) (sufficiency "is to be measured
upon that which was admitted in evidence without regard to the
propriety of the admission").

The evidence at trial was as follows:  (1) the defendant
and a companion reacted to the police presence at the park and
fled, bumping into one another as they did, (2) the firearm was
found to the right, in the path of the defendant's flight, (3)
the white hat and shirt officers saw the defendant wearing at
the basketball court were recovered from trash cans in the park
along the defendant's flight path, (4) the defendant stipulated
that the clothes were his and the Commonwealth submitted DNA
evidence linking the defendant to the hat and shirt, (5) the
defendant told Officer Steele that he had not been in the park,
although Steele and other officers saw him run out of the park,
(6) the defendant told Officer Steele and the booking sergeant

---

[6] Although the Commonwealth proceeded on a theory of actual
possession during trial, the judge's charge to the jury included
instructions on both actual and constructive possession.

that he was out of breath because he had been arguing with his girlfriend on his cell phone, when the cell phone call log revealed this to be untrue, and (7) the defendant told the booking sergeant that his girlfriend, whom he had called earlier on his cell phone, was the same person he had called during booking, when the cell phone call log revealed this to be untrue.

When viewed in the light most favorable to the Commonwealth, this evidence is sufficient to support the verdicts. "While no recoverable fingerprints were found on the [gun] and no one saw anyone throw the firearm [away] during the chase, a jury reasonably could have inferred" that its location in the defendant's flight path was "consistent with where it would have landed had it been thrown" by the defendant when running from the police through the park. Commonwealth v. Jefferson, 461 Mass. 821, 826 (2012).[7] A rational jury could have also inferred that the defendant began to leave the park and run from the police for a reason, "and that the reason was to throw away contraband that [the defendant] feared the police

---

[7] The defendant also contends that his motion to supplement the record to include measurements of distances in the park was wrongly denied. The judge did not abuse his discretion in denying the motion. See Commonwealth v. Bregoli, 431 Mass. 265, 280 n.28 (2000). The measurements were not part of the record before the jury. The jury took a view, but the distances witnessed by the jury in the view were not in evidence. See Commonwealth v. Gomes, 459 Mass. 194, 199 (2011) (view not strictly evidence).

would find during a stop." Ibid. That none of the officers saw the defendant with the gun or discard the gun, and the "pitch dark" conditions in the park, go to the weight, not the sufficiency, of the evidence. See id. at 826-827. The location of the gun, in conjunction with the other evidence of consciousness of guilt, would permit a rational fact finder to conclude beyond a reasonable doubt that the defendant possessed the firearm. Ibid.

2. Denial of motion to suppress. The defendant contends that the judge erroneously denied his motion to suppress because (1) the stop was not based on reasonable suspicion, (2) if the stop was permitted, ordering the defendant to the ground at gunpoint impermissibly transformed the stop into an arrest lacking probable cause, and (3) regardless of the stop or arrest, the warrantless searches of the defendant's cell phone in the park and at the station were improper.

The judge credited the officers' testimony in full. The judge ruled that the officers had reasonable suspicion that the defendant was trespassing.[8] The judge also found that the

---

[8] The judge also found that there was reasonable suspicion because (1) the stop occurred in a high crime area, (2) the defendant and the other man were acting in a manner "markedly different" from the rest of the crowd in the park, (3) the defendant ran from the police without prompting, and (4) the defendant and the other man ran into each other because they were in a haste to flee. At oral argument the Commonwealth stated its intention to rely solely on a reasonable suspicion of

officer in the vehicle recognized the defendant as someone previously convicted of a firearm offense, justifying the further detention and restraint of the defendant.  The judge concluded that the recovery of the gun elevated the officers' reasonable suspicion to probable cause sufficient to arrest, and that exigent circumstances provided an exception to the warrant requirement, permitting the warrantless search of the defendant's cell phone.

"When reviewing the denial of a motion to suppress, we accept the judge's findings of fact and will not disturb them absent clear error.  Commonwealth v. Watson, 455 Mass. 246, 250 (2009).  We make an independent determination as to the correctness of the judge's application of constitutional principles to the facts as found.  Id."  Commonwealth v. Carr, 464 Mass. 855, 873 (2013).

a.  Reasonable suspicion.  The judge did not explicitly find when the stop occurred.  The facts are undisputed and we may make such a finding as a matter of law on the record presented.  See Commonwealth v. Sykes, 449 Mass. 308, 310 (2007), citing Commonwealth v. Barros, 435 Mass. 171, 173 (2001)

---

trespass.  We likewise rest our opinion solely on this ground and do not address whether flight plus presence in a "high crime area" late at night are sufficient to support a finding of reasonable suspicion.  See generally Commonwealth v. Jones-Pannell, 85 Mass. App. Ct. 390, 395-396, further appellate review granted, 469 Mass. 1106 (2014); Commonwealth v. Warren, 87 Mass. App. Ct. 476, 481-483 (2015).

("Determining the precise moment at which a seizure occurs is critical to resolving the issue of suppression").  The stop occurred when the three police officers got out of the unmarked cruiser and began to pursue the defendant on foot while the remaining officer activated the cruiser's blue lights and drove to the back of the park.  See Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981); Commonwealth v. Williams, 422 Mass. 111, 117 (1996); Commonwealth v. Stoute, 422 Mass. 782, 782-783 (1996); Commonwealth v. Grandison, 433 Mass. 135, 138 (2001) (blue lights); Sykes, supra at 314 (chase).[9]

The police may conduct a stop for a threshold inquiry where the officer has reasonable suspicion, "based on specific and articulable facts and the specific reasonable inferences" drawn therefrom, that criminal activity has taken place, is taking place, or is about to take place.  Commonwealth v. Silva, 366 Mass. 402, 405-406 (1974).  The reasonableness of the officer's suspicion must be assessed based on the factors present before the pursuit, i.e., the stop, ensued.  See Thibeau, supra at 764.

The judge found that the officers had reasonable suspicion that the defendant was a trespasser based on the testimony of the three officers, including a former Boston municipal police

---

[9] The Commonwealth acknowledges that the stop occurred at the time of pursuit.  No argument has been made on appeal that the officers were merely following the suspects.  Compare Commonwealth v. Perry, 62 Mass. App. Ct. 500, 502-503 (2004).

officer, that the park was closed to visitors because the park lights were off.[10]  The defendant contends that the officers' assessment was based on a mistake of fact, because the Commonwealth failed to show that the park was posted with no trespassing signs.  See G. L. c. 266, § 120 (requiring either direct admonition or posted notice to prove trespass). Reasonable suspicion is assessed based on the facts and circumstances known to a reasonable police officer at the time the stop is initiated.  This determination does not require perfect knowledge, but an assessment based on objective factors "sufficient to create a reasonable suspicion in . . . a reasonable . . . officer."  Commonwealth v. Bernard, 84 Mass. App. Ct. 771, 773 n.2 (2014), quoting from Commonwealth v. Smigliano, 427 Mass. 490, 493 (1998).  The absence of lighting in the park at midnight formed an objective basis for determining that the park was closed.

The defendant maintains that the Commonwealth failed to meet its burden of proof because there was no evidence that the park was posted, and no crime was actually committed.  See Commonwealth v. Greene, 461 Mass. 1011, 1011-1012 (2012). Reasonable suspicion is not lacking even if the objective

---

[10] The former municipal police officer's knowledge of municipal trespass ordinances may be imputed to his fellow officers.  See Commonwealth v. Roland R., 448 Mass. 278, 285 (2007).

factual basis for reasonable suspicion is shown after the fact to be erroneous.  See Commonwealth v. Rivas, 77 Mass. App. Ct. 210, 215-216 (2010) ("red rejection sticker" on car provided objective factual basis for concluding that there is or may be defect making operation of car unlawful even if operation was not, in fact, unlawful).  Cf. Commonwealth v. Wilkerson, 436 Mass. 137, 140 (2002), quoting from Commonwealth v. Storey, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980) ("Probable cause to arrest is not vitiated when the basis on which the police officer acted is shown after the fact to have been erroneous, because the existence of probable cause is determined 'at the moment of arrest,' not in light of subsequent events").[11]

For the first time on appeal the defendant cites a Boston municipal ordinance for the premise that the defendant was permitted to travel through the park after closing.  See Boston Parks and Recreation Commission Rule 1(f) (2014).  The ordinance

---

[11] It is unclear whether the defendant also argues mistake of law, but in any event the argument is inapplicable.  The late hour and absence of lighting provided an objective factual basis for concluding that the defendant and others were trespassing.  Greene, supra at 1011-1012, cited by the defendant, is inapposite, as it deals with the sufficiency of proof of trespass for conviction.  For this reason we need not address whether a mistake of law vitiates reasonable suspicion under Massachusetts law.  Compare Heien v. North Carolina, 135 S. Ct. 530, 536-540 (2014) (stop based on mistake of law valid under Fourth Amendment to United States Constitution), with Commonwealth v. Censullo, 40 Mass. App. Ct. 65, 67-70 (1996) (invalidating stop based on mistake of law).

was not before the judge, and any argument based on the ordinance is waived. See Commonwealth v. Quint Q., 84 Mass. App. Ct. 507, 514-515 (2013); Mass.R.Crim.P. 13(a)(2), as appearing in 442 Mass. 1516 (2004). Nor may this court take judicial notice of municipal ordinances. See Cerwonka v. Saugus, 316 Mass. 152, 153 (1944); Commonwealth v. Berney, 353 Mass. 571, 572 (1968); Mass. G. Evid. § 202(c) (2014). Regardless, the officers' fully-credited testimony was that the defendant was not passing through the park, but was standing on the basketball court until the officers parked their unmarked vehicle outside of the basketball court, at which time the defendant fled. The judge's conclusion that there was reasonable suspicion that the defendant was trespassing was not error.

b. Arrest without probable cause. The defendant contends that ordering him to the ground at gunpoint impermissibly elevated the stop to an arrest lacking probable cause. "An officer is entitled to take reasonable steps to ensure his safety. Such steps do not automatically turn a stop into an arrest." Williams, 422 Mass. at 117. The use of handcuffs is also not dispositive. Id. at 118.

While "[t]he suspicion that the person encountered has an illegal gun may not of itself justify the use of force absent 'other fear-provoking circumstances,'" Commonwealth v. Willis,

415 Mass. 814, 820 (1993), quoting from Commonwealth v. Bottari, 395 Mass. 777, 782 (1985), the history of firearms offenses in the area, coupled with the officer's knowledge of the defendant's prior firearm offense, provided the officer with sufficient safety concerns to justify the officer's approach with gun drawn. See Williams, supra at 117. Restraining the defendant in handcuffs during the search of the park was permissible since he "posed a substantial flight risk given that he tried to flee" upon seeing the other officers get out of the unmarked cruiser. Id. at 118.

c. Search of cell phone. The Commonwealth argues on appeal that the search of the cell phone at the scene and the later search at the station were justified as a search incident to arrest, see Commonwealth v. Phifer, 463 Mass. 790 (2012); Commonwealth v. Berry, 463 Mass. 800 (2012), or alternatively as a search justified by exigent circumstances. The United States Supreme Court's recent decision in Riley v. California, 134 S. Ct. 2473, 2494 (2014) ("search incident to arrest exception does not apply to cell phones"), decided after the judge's decision in this case, forecloses both arguments. See Commonwealth v. Sheridan, 470 Mass. 752, 763 (2015) (same).

In Phifer, the Supreme Judicial Court upheld the search of the call log of a "flip phone" at the time of booking. The court held that the highly limited search was a lawful search

incident to arrest because there was probable cause to believe that the telephone would have evidence relevant to the crime (narcotics trafficking) for which the defendant was arrested. Phifer, supra at 796-798.  In Berry, supra at 807, the Supreme Judicial Court likewise held that the booking detective's review of the call log on a flip phone constituted a proper search incident to arrest because "the police had reasonable grounds to believe that the recent call list would reveal evidence related to the drug distribution crime for which the defendant was arrested."  In both cases the Supreme Judicial Court limited the application of its holding, noting that its "assessment" would not necessarily "be the same on different facts, or in relation to a different type of intrusion into a more complex cellular telephone or other information storage device."  Phifer, supra at 797; Berry, supra.  These holdings rested, however, on the foundational premise "that cellular telephones do not possess special characteristics that remove them from the general framework enunciated by the Supreme Court in the Edwards, Robinson, and Chimel line of cases."[12]  Phifer, supra at 794 n.5.

In Riley, the Supreme Court rejected the application of the Edwards, Robinson, and Chimel rationale to the warrantless search of the call log of a flip phone at booking, requiring

---

[12] See Chimel v. California, 395 U.S. 752, 762-763 (1969); United States v. Robinson, 414 U.S. 218, 234-235 (1973); United States v. Edwards, 415 U.S. 800, 802-803 (1974).

that a warrant be sought.  The Court concluded that the digital contents of cell phones "place vast quantities of personal information" in the hands of the police, and that the search of a cell phone "bears little resemblance to the type of brief physical search considered in Robinson."  Riley, supra at 2485. The Court also held that the Chimel factors -- officer safety[13] and prevention of destruction of evidence - generally have little application in the context of the search of a cell phone incident to arrest.  Id. at 2485-2487.

Here, as in Riley, the Commonwealth argues that the warrantless search was justified by the second Chimel rationale -- preventing the destruction of evidence.  Similar arguments regarding telephone logs, as well as encryption, and even remote wiping, were considered and rejected in Riley.  The Court reasoned that remote wiping, a form of "destruction unique to digital data, . . . can be fully prevented" by, among other things, turning the telephone off or removing its battery.  Id. at 2486-2487.  Encryption may be foiled by placing the telephone in a "Faraday bag," a "cheap, lightweight, and easy to use" aluminum foil bag.  Id. at 2487.  With respect to password protection, the Court observed that "officers are very unlikely

---

[13] An officer may examine the telephone to determine, for example, if a razor blade has been hidden there, but "[o]nce an officer has secured a phone and eliminated any potential physical threats, . . . data on the phone can endanger no one."  Riley, supra at 2485.

to come upon such a phone in an unlocked state" and that "if officers happen to seize a phone in an unlocked state, they may be able to disable a phone's automatic-lock feature in order to prevent the phone from locking and encrypting data" while they seek a warrant. Ibid. Finally, the Court expressly rejected the government's argument that "officers should always be able to search a phone's call log." Id. at 2492.

Here, the cell phone was found in an unlocked state. There was no testimony suggesting that it was in fact password protected, or that there was any concern of remote wiping. There was no effort to secure the telephone in any fashion or to seek a warrant. The rationale for the warrantless search was that the record of calls would be pushed out of the call log in the event of other incoming calls. This problem could be averted either by turning the cell phone off, placing the cell phone in a Faraday bag, or securing the cell phone and seeking a warrant for it. Riley, supra. The warrantless search at the scene and at the station violated the Fourth Amendment to the United States Constitution.[14]

---

[14] Riley did not address the feasibility of obtaining a warrant for the cell phone service provider's records. No claim was made by the Commonwealth below that such records were unavailable. At oral argument, the Commonwealth stated that it preferred to avoid the delay associated with obtaining records from a third party. As noted infra, however, no valid claim of exigency has been made here.

For similar reasons, no exigent circumstances were present. See Commonwealth v. Ericson, 85 Mass. App. Ct. 326, 331 n.8 (2014) ("We recognize that data on a cell phone -- even in police custody -- may change through the length of time preceding execution of a search warrant. . . . [I]ncoming text messages may displace stored messages . . . . However, these possibilities do not necessarily create an exigency requiring an immediate search of a cell phone").  Exigent circumstances, such as "the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury" may justify a warrantless search of a cell phone.  Riley, supra at 2494.  These circumstances are not present here, and for the reasons stated above, the possible degradation of the call log is not an exigent circumstance since that degradation is preventable.  See United States v. Camou, 773 F.3d 932, 942 (9th Cir. 2014) ("volatile nature of call logs" is not exigent circumstance; Riley "forecloses" that argument).  See generally Commonwealth v. Kaupp, 453 Mass. 102, 106 n.7 (2009) ("The exigency necessitating . . . seizure dissipated once the computer had been secured, requiring the police to seek a search warrant" to examine its contents).[15]

---

[15] We note that under Massachusetts law the inevitable discovery doctrine does not apply in this circumstance.  See

Because this error is one of constitutional dimension, we must determine whether the admission of the evidence concerning the call log was harmless beyond a reasonable doubt. Commonwealth v. Charros, 443 Mass. 752, 765 (2005).[16] "Under this standard, the burden shifts to the Commonwealth, see Commonwealth v. MacDonald (No.1), 368 Mass. 395, 399 (1975), to show that the wrongfully admitted evidence did not contribute to the verdicts. See Commonwealth v. Peixoto, 430 Mass. 654, 660 (2000)." Ibid. "We have recognized that a constitutional violation gives rise to presumptive prejudice that can be overcome only where the Commonwealth makes an 'affirmative showing' of harmlessness beyond a reasonable doubt." Commonwealth v. Tyree, 355 Mass. 676, 701 (2010), quoting from Commonwealth v. Rios, 412 Mass. 208, 214 (1992). See Commonwealth v. Hoyt, 461 Mass. 143, 154 (2011). "The Commonwealth's brief makes no argument concerning whether the error was harmless, and thus it has not made the requisite showing." Commonwealth v. Murphy, 448 Mass. 452, 471 (2007). Nonetheless, we consider the relevant factors.

_____

Commonwealth v. Benoit, 382 Mass. 210, 218-219 (1981) (requiring warrant). An inventory search would have resulted in discovery of the cell phone, not its contents. Compare Commonwealth v. O'Connor, 406 Mass. 112, 115-119 (1989).

[16] Whether viewed as an old or new rule, the holding in Riley is applicable to cases pending on direct review. Commonwealth v. Clarke, 460 Mass. 30, 34-35 (2011), citing Teague v. Lane, 489 U.S. 288 (1989).

"The 'essential question' is whether the error had, or might have had, an effect on the jury and whether the error contributed to or might have contributed to the jury's verdicts." Commonwealth v. Housewright, 470 Mass. 665, 675 (2015), quoting from Commonwealth v. Perrot, 407 Mass. 539, 549 (1990). It is not enough to show that the evidence was otherwise sufficient, or that the "inadmissible evidence was consistent with the admissible evidence. Rather, we ask whether, on the totality of the record before us, weighing the properly admitted and the improperly admitted evidence together, we are satisfied beyond a reasonable doubt that the tainted evidence did not have an effect on the jury and did not contribute to the jury's verdicts." Tyree, supra (quotation and citation omitted).

In aid of this task, we look to factors such as "the importance of the evidence in the prosecution's case; the relationship between the evidence and the premise of the defense; who introduced the issue at trial; the frequency of the reference; whether the erroneously admitted evidence was merely cumulative of properly admitted evidence; the availability or effect of curative instructions; and the weight or quantum of evidence of guilt." Commonwealth v. Dagraca, 447 Mass. 546, 553 (2006). See Commonwealth v. Mahdi, 388 Mass. 679, 697 (1983)

(these factors, though "useful," are "not exclusive or exhaustive").

We conclude that the improperly admitted evidence was not harmless beyond a reasonable doubt. Tyree, supra at 700-702. To be sure, the evidence of guilt was sufficient, but it was not overwhelming. There was no testimony from any of the officers that they saw a concealed bulge, or that the defendant grabbed for his waistband, pressed his waist, ran stiff-armed or in an otherwise awkward manner, or engaged in any sort of furtive gesture. Compare Commonwealth v. DePeiza, 449 Mass. 367, 371-372 (2007); Commonwealth v. Jones-Pannell, 85 Mass. App. Ct. 390, 397, further appellate review granted, 469 Mass. 1106 (2014); Commonwealth v. Colon, 87 Mass. App. Ct. 398, 402 (2015). No one saw the defendant make a throwing motion. Compare Commonwealth v. Franklin, 456 Mass. 818, 823 (2010). There was no DNA or fingerprint evidence to link the defendant to the gun. There was no percipient witness who saw him with the gun, and the defendant denied that it was his. The gun was found late at night along his flight path, but that path was located in a public park populated by a number of Fourth of July party-goers.

The defense theory was that a party-goer may have tossed the gun after the police chase began, and that the defendant attempted to evade and mislead the police because he simply did not want to be questioned or detained. This theory was not

summarily rejected by the jury. After a period of deliberation, the jury requested reinstruction not only on reasonable doubt, but specifically on consciousness of guilt. "[T]o overcome [the] presumption of harm, [the] Commonwealth's admissible evidence must be truly overwhelming" "in the sense that it was so powerful as to nullify any effect the [illegally obtained evidence] might have had on the jury." Tyree, supra at 704 n.44 (quotations omitted).[17]

Here, the evidence and arguments at trial focused in large part on the inferences to be drawn from the consciousness of guilt evidence -- the defendant's flight, his discarding of his clothing, and his statements to the police regarding his presence in the park and the call to his girlfriend. The improperly admitted evidence went to the heart of that aspect of the case. The call log was indisputable, concrete proof that the defendant had not been talking on the cell phone with his girlfriend before his arrest. The Commonwealth offered two witnesses, Officer Steele and the booking sergeant, to testify concerning what was found on the cell phone log. The Commonwealth also introduced two photographs of the call log,

---

[17] In Tyree, supra at 700-704, the court determined that the admission of evidence which should have been suppressed was not harmless where the evidence tied the defendant to the crime and the evidence was a centerpiece of the prosecutor's closing argument.

all to show that the defendant had engaged in an elaborate fabrication which was disproved by concrete, physical evidence.

The Commonwealth then repeatedly relied on the call log in its closing to portray the defendant as a man who was telling elaborate lies because he knew he was guilty of possessing the gun. "[R]epeated emphasis on the improperly admitted evidence in the prosecutor's closing argument . . . reflects the centrality of that evidence to the Commonwealth's case." Id. at 703. The evidence "increas[ed] the likelihood that the jury would view the defendant as a liar," who would make up a story to avoid responsibility for his crimes. Hoyt, 461 Mass. at 155, quoting from Commonwealth v. McNulty, 458 Mass. 305, 322 (2010).

The observation has been made in another context that "[w]e cannot overestimate the effect on the jury of . . . [the] argument tending to show consciousness of guilt on the part of the defendant." Commonwealth v. Person, 400 Mass. 136, 142 (1987), quoting from Commonwealth v. Cobb, 374 Mass. 514, 521 (1978). The ongoing emphasis on the defendant's "lies" removes this case from those in which the improperly admitted evidence is considered merely cumulative. See Commonwealth v. Galicia, 447 Mass. 737, 747-748 (2006) (improperly admitted inculpatory statements were cumulative of properly admitted inculpatory statements); Commonwealth v. Martin, 467 Mass. 291, 309-310

(2014) (same; additional factors included flight after issuance of warrant and use of false name).

The Commonwealth's case was built by carefully assembling each piece of evidence of consciousness of guilt. The theme of the closing argument was that of a puzzle. The prosecutor stated that the case was similar to a child's puzzle because the pieces of evidence were both big and small and that one could fill in the whole puzzle without seeing all the pieces. He described the big pieces as the discovery of the gun, the flight, and the clothing. He then turned to the defendant's "lies," and in the final moments of the closing argument, emphasized the "fake phone conversations," urging the jury to look at this "lie" in particular to fill in the "puzzle." Given the emphasis placed by the prosecutor on the improperly admitted evidence, we can not say that the tainted evidence did not contribute to the jury's verdicts. See Hoyt, supra at 156.

The prosecutor's closing also contained statements which, when combined with the puzzle analogy and the emphasis placed on the improperly admitted evidence, underscore our conclusion that the admission of the improperly seized evidence was not harmless beyond a reasonable doubt. The prosecutor stated, "We're not charging [the defendant] with that second firearm. . . . Maybe he had it. Maybe he didn't. Maybe it was the person with the blue shirt. We don't know. Because we don't know, we don't

charge. What we do know is that [the defendant] is the only person who could have dropped that [firearm]." The statement, "[b]ecause we don't know, we don't charge," followed closely by, "[w]hat we do know," constituted vouching insofar as the prosecutor "invite[d] the jury to rely on the prestige of the government and its agents rather than the jury's own evaluation of the evidence." Commonwealth v. Caswell, 85 Mass. App. Ct. 463, 475 (2014), quoting from United States v. Torres-Gaindo, 206 F.3d 136, 142 (1st Cir. 2000). The prosecutor's statements also suggested that the Commonwealth charged the defendant with possession of the firearm because the Commonwealth had superior knowledge, inviting the jury to rely on the Commonwealth's investigatory apparatus and inherent credibility to credit its version of events and thus fill in the gaps in the "puzzle." While these statements may or may not constitute reversible error per se, they weigh heavily when determining whether other error of constitutional dimension is harmless beyond a reasonable doubt.

Finally, there were no instructions which ameliorated the prejudice. The judge fully and properly instructed the jury in accordance with Commonwealth v. Toney, 385 Mass. 575, 584-585 (1982). However, because the evidence was deemed properly admitted, the judge (understandably) incorporated the prosecutor's theory into the consciousness of guilt instruction,

telling the jury that "the Commonwealth has argued that [the defendant's] alleged flight after observing the officers . . . and his false statements, I believe in argument characterized as lies, after he was stopped by Officer Steele is evidence of his consciousness of guilt."  When the jury requested reinstruction on consciousness of guilt, they were given a written copy of this instruction.  Because the instruction highlighted the prosecutor's focus on "lies" that were proven in part by improperly admitted evidence, the instruction did not ameliorate, and indeed underscored, the prejudice.

Conclusion.  Accordingly, the judgments are reversed, the verdicts are set aside, and the case is remanded for a new trial.

So ordered.