The juvenile was charged with carrying a loaded firearm without a license, G. L. c. 269, § 10(n ) (count 1), carrying a firearm without a license, G. L. c. 269, § 10(a ) (count 2), and possessing ammunition without a firearm identification card, G. L. c. 269, § 10(h )(1) (count 3). The juvenile filed a motion to suppress evidence on the ground that it was the fruit of an illegal seizure. After a hearing, the motion judge denied the motion. The juvenile was found delinquent on all counts and now appeals.
The juvenile argues that the police lacked reasonable suspicion based on specific and articulable facts that crime was afoot at the time that he and a companion were stopped. The judge's subsidiary findings, which are not contested, included the following. On patrol at 12:30 A.M . in a high crime area in an unmarked, but identifiable, police car, Officer Christopher Stevens and Officer Joseph McDonough observed the juvenile walking with a companion. The companion stared at the police car as it twice drove by. The juvenile periodically looked back at it. The officers, coming from behind the two, pulled up about twenty feet in front of them and exited the vehicle. The two individuals immediately changed direction and began to walk away from the officers. While the individual in a gray hooded sweatshirt-the juvenile-turned to walk away, he grabbed his left side, "made like a big adjustment, pulling his pant leg up," and it appeared that he was lifting something on his left side. Officer McDonough testified that he had been instructed on specific characteristics to identify people who might be armed with an illegal weapon. These characteristics include baggy clothing, favoring one side more than another, and grabbing at one's side to do security checks (i.e., making sure that the weapon is remaining in place) because individuals who are carrying illegal weapons usually do not use holsters for their weapons.
At this point, Officer Stevens believed that the juvenile was armed and asked the individuals to "hold up a second." We will assume, without deciding, that this is the point at which the juvenile was "stopped" for constitutional purposes.
Officers have the right to make a threshold inquiry of an individual if suspicious conduct gives the officer reason to believe that the person has committed, is committing, or is about to commit a crime. Commonwealth v. Silva, 366 Mass. 402, 405 (1974). The officer's actions must "be based on specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience." Id. at 406. Additionally, the officer must have an "individualized" suspicion that the person he seizes committed a crime, is committing a crime, or is about to commit a crime. Commonwealth v. Warren, 475 Mass. 530, 534 (2016). The court must assess reasonable suspicion based on factors present before the officer has seized the individual. Commonwealth v. Dyette, 87 Mass. App. Ct. 548, 555 (2015). Reasonable suspicion is based on the totality of the circumstances. See Commonwealth v. Feyenord, 445 Mass. 72, 77 (2005).
Staring at the police, even changing direction to avoid the police, may well be wholly innocent. But when combined with the juvenile's behavior in grabbing his left side, making a "big adjustment, pulling his pant leg up," and appearing to lift something on his left side-all supporting a conclusion based on the officer's training that the juvenile unlawfully possessed a firearm-that conduct must be seen in a different light. Taken together, the facts described above provided the reasonable suspicion necessary to justify the officer's investigatory stop. Therefore the judge did not err in denying the motion to suppress.[3]
Finally, the Commonwealth notes that count 3 is duplicative of count 1, and we agree. Therefore, as it requests, the adjudication on count 3 will be vacated. See Commonwealth v. Johnson, 461 Mass. 44, 51-54, 59 (2011).
As to counts 1 and 2, the adjudications of delinquency are affirmed. As to count 3, the adjudication of delinquency is vacated, the finding is set aside, and the charge shall be dismissed.
Affirmed in part; vacated and dismissed in part.

We note that the Commonwealth argues that it was suspicious that the juvenile and his companion were wearing "hoodies" on a humid summer night; we need not and do not rely on this fact in our assessment. See Warren, 475 Mass. at 534-536. We note also that the Commonwealth contends that it is suspicious that the juvenile had the hood of his sweatshirt tightened around his face, but since we need not rely on that fact in reaching our decision, we do not decide whether or to what extent this conduct can be deemed suspicious.